MILL FACTORS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20078. Promulgated June 30, 1950.

*George E. Cleary, Esq.,* and *Martin C. Barell, Esq.,* for the petitioner.

*Scott A. Dahlquist, Esq.,* for the respondent.

**1372**

OPINION.

BLACK, *Judge*: The issue herein is whether petitioner is entitled to a deduction from gross income for the year 1942 in the amount of $161,353.83 as an addition to its reserve for bad debts. Petitioner's assignment of error claimed that the deduction should be $164,475.34, but now claims that it should be $161,353.83. Section 23 (k) (1) of the Internal Revenue Code [1] permits a taxpayer, at the Commissioner's discretion, to make a reasonable addition to its reserve for bad debts in lieu of deducting debts which become worthless within the taxable year. What is a reasonable addition to reserve depends upon the nature of the business, general business conditions, past experience in collecting accounts and bad debts, the amount of the existing reserve, and all other material factors. Cf. *Black Motor Co.*, 41 B. T. A. 300; affd., 125 Fed. (2d) 977.

The facts herein disclose that petitioner's reserve for bad debts at January 1, 1942, was $107,097.83. The net charges against this reserve for 1942 (other than the charge of $3,121.51 for advances to salesmen which respondent has allowed as a deduction from profit and loss) amount to $18,451.66, leaving a bad debt reserve before any addition of $88,646.17. Petitioner, in its income tax return for the year 1942, deducted the amount of $21,573.17 from gross income for the addition to the reserve for bad debts which respondent allowed. This brought petitioner's reserve at December 31, 1942, to $110,219.34. Petitioner claims that a reasonable reserve for bad debts at December 31, 1942, was $250,000 and that an addition of $161,353.83 necessary to produce this reserve was a normal annual deduction to be made in 1942 in the light of its past experience and all the surrounding circumstances. Respondent denies that petitioner is entitled to the deduction of $161,353.83 as an addition to its bad debt reserve for 1942.

The fact that petitioner claimed on its return an addition to its

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
* * * * * * *
(k) BAD DEBTS.—
(1) GENERAL RULE.—Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; * * *

reserve for bad debts of but $21,573.17 does not prejudice its right to deduct a larger amount if that is found to be a reasonable addition to the reserve. The amount of the deduction to which petitioner is entitled as a reasonable addition to a reserve for bad debts is not to be determined on merely technical grounds, but, as pointed out above, depends on all the facts and circumstances of the petitioner's business. *Houston Chronicle Publishing Co.*, 3 T. C. 1233, 1242; *Rhode Island Hospital Trust Co.* v. *Commissioner*, 29 Fed. (2d) 339; *Athol Manufacturing Co.*, 22 B. T. A. 105; affd., 54 Fed. (2d) 230.

The evidence herein shows that the petitioner was engaged in the factoring business. It made loans to clients on the security of running inventories of merchandise up to two-thirds of the value of such inventories and it purchased accounts receivable from clients without recourse therein, taking the entire credit risk with respect to such amounts. This involved the dealing with some 125 to 150 clients and extending credit to some 12,000 customers of the clients. Petitioner dealt primarily with the textile industry, and it operated on a small margin of profit.

Petitioner argues that the deduction of $161,353.83 claimed by it is fully justified by its actual past experience for the years 1920 to 1942, which was substantially the entire period of its existence. It points out that over this period petitioner's net bad debt losses amounted to $2,304,577.60 and averaged 2.10 per cent of the accounts receivable outstanding at the close of the years. Applying the ratio of 2.10 per cent to the amount of the accounts receivable of $7,863,200 outstanding at December 31, 1942, it arrives at a figure of $165,127. It further points out that over the same years petitioner's actual net bad debts were .43 per cent of its gross credit sales, and, applying the ratio of .43 per cent to the amount of $54,755,100, the gross credit sales for 1942 are $235,446. Thus petitioner claims that the deduction of $161,353.83 claimed by it as a deduction for 1942 is justified by its past experience. On the other hand, petitioner points out that the amount of $21,573.17 originally deducted by it and allowed by respondent is less than its actual bad debts for any of the years 1920 to 1941, inclusive, and is but .27 per cent of the receivables outstanding at the close of 1942, as compared with an actual 23-year experience of 2.10 per cent. Also, that the amount of $21,573.17 is but .04 per cent of the gross credit sales as compared with an actual 23-year experience of .43 per cent.

A taxpayer's past experience as to the collection of accounts and bad debts is an important factor in determining a reasonable addition to its bad debt reserve. However, as pointed out in *Black Motor Co.*, *supra*, "A method or formula that produces a reasonable addition to a bad debt reserve in one year, or a series of years, may be entirely out of tune with the circumstances of the year involved."

As set out in our findings herein, petitioner's reserve for bad debts at the beginning of 1942 was $107,097.83 and at the end of 1942, with the addition of $21,573.17 to the reserve, which respondent has allowed, its bad debt reserve amounted to $110,219.34. The ratio of this reserve to the receivables in 1942 of $7,863,200 is approximately 1.40 per cent. The petitioner's experience during the previous seven years; that is, 1935 to 1941, shows that the ratio of bad debts to receivables was approximately 1.26 per cent. The application of that percentage to the receivables for the taxable year 1942 would indicate a bad debt expectancy of but $99,076.32.

Petitioner's officers testified that the principal consideration in determining to maintain a reserve of $250,000 was the economic situation, namely, the war conditions, giving rise to an abnormal prosperity which in their judgment would result in substantial losses when the war ended, their judgment being based on their experience after the first world war. We have given this testimony the careful consideration and weight which it deserves. Cf. *Rhode Island Hospital Trust Co.* v. *Commissioner, supra.* However, they did not show that they had good reason to believe that more than $110,219.34 would be lost in collecting on the receivables then due in 1942 in the amount of $7,863,200. A bad debt reserve is an estimate of the future losses which it is assumed will result from current business debts. The estimate of the bad debt reserve required for any year must be measured by the conditions as they appear at the time the estimate is made. *C. P. Ford & Co.*, 28 B. T. A. 156. The reserve of $110,219.34 appears to have been ample to take care of all losses on these accounts reasonably foreseeable in 1942. It was far in excess of what had proved to be necessary during the preceding seven years, with the exception of 1938, when its net bad debts amounted to $169,152.76. However, the evidence showed that this was abnormal and was due, at least in part, to inflation which existed in the years 1936 and 1937 and which had its break in the first part of 1938. Certainly the fact that the country was at war in 1942 made it likely that textiles would continue to be in demand and the risk of losses through nonpayment of accounts would be diminished. Furthermore, the evidence shows that, while petitioner's gross sales increased in 1942 over 1941 in the amount of $6,208,900, its receivables in 1942 decreased below 1941 in the amount of $1,015,100, and that the rate of collections on the receivables in 1942 was greater than the rate of collections in 1941.

Moreover, an analysis of the bad debt reserve of the petitioner for the years 1943 to 1946, inclusive, discloses that for the years 1943 and 1944 there were net charges for accounts written off in the respective amounts of $7,017.69 and $8,251.98. For the years 1945 and 1946 the recoveries of bad debts previously written off exceeded the

charge against the earnings for those years by the respective amounts of $7,030.84 and $2,706.68. Therefore, petitioner's actual experience for the four-year period following the taxable year indicates that the amount of the reserve of $110,219.34 on December 31, 1942, was more than adequate to meet petitioner's needs. In *Farmville Oil & Fertilizer Co.* v. *Commissioner*, 78 Fed. (2d) 83, the court said that "under proper circumstances the correctness of the taxpayer's estimate in fixing the amount to be added to the reserve in any year may be supported by reference to the losses actually incurred in subsequent years * * *."

The evidence does not convince us that petitioner could reasonably expect probable losses which would justify any addition to its reserve at January 1, 1942, over and above the amount of $21,573.17 deducted by the petitioner on its original return and allowed by the respondent. Cf. *C. P. Ford & Co.*, *supra*, *Maverick-Clarke Litho Co.*, 11 T. C. 1087, *Morris Plan Ind. Bank* v. *Commissioner*, 151 Fed. (2d) 976. Based on all the evidence, our conclusion is that no further addition to petitioner's reserve for bad debts was reasonably required in 1942 than that which respondent has allowed, and we have found as a fact that a reasonable addition to the petitioner's reserve for bad debts for the year 1942 is $21,573.17.

*Decision will be entered for the respondent.*