**WENGEL, INC., a Michigan corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 29848.**

United States District Court
E. D. Michigan, S. D.

Nov. 4, 1969.

John R. Carney, O'Dowd & Carney, Detroit, Mich., for plaintiff.

Mitchell Rogovin, Asst. Atty. Gen., Tax Division, David A. Wilson, Jr., Chief Refund Trial Section No. 1, Donald R. Anderson, D. Patrick Mullarkey, Dept. of Justice, Washington, D. C., James H. Brickley, U. S. Atty., Detroit, Mich., for defendant.

## OPINION

THEODORE LEVIN, District Judge.

Plaintiff brought this action following the disallowance of plaintiff's claim for taxes paid for the year ending September 30, 1958.[1]

The facts in this case were stipulated by the parties, the pertinent parts of which are as follows. Plaintiff, a Michigan corporation, is engaged in the wholesale meat business, selling primarily to restaurants in the Detroit area. One of plaintiff's customers was the Knife and Fork Club, Inc. From the beginning of November, 1960, to September 30, 1961, the amount of the accounts receivable owed to the plaintiff by this customer increased from less than $1,000.00 to $30,598.94. At the beginning of October, 1961, plaintiff required that all sales to the Knife and Fork Club, be made on a cash basis only, because of its poor financial condition. On January 23, 1962, an involuntary petition in bankruptcy was filed against the Knife and Fork Club. The plaintiff, a general creditor, filed a claim for $30,598.94 but there was no distribution for general creditors.

Plaintiff, under § 166(c)[2] of the Internal Revenue Code of 1954, elected to use the reserve method of deducting bad debts. In the fiscal year ending September 30, 1961, plaintiff increased the reserve for bad debts on its books by $2,726.00 while charging off $800.00 for bad debts, and its books reflected a bad debt reserve of $3,500.00. No part of the increase in the reserve for bad debts account on plaintiff's books during the fiscal year ending September 30, 1961, was attributable to the account receivable from the Knife and Fork Club.

On June 30, 1962, after determining that no part of its claim against this debtor was collectible, the plaintiff made entries on its books reflecting the $30,598.94 bad debt. On December 10, 1964, plaintiff filed a Claim for Refund of Taxes paid with respect to the taxable year ending September 30, 1958, claiming that as of September 30, 1961, the Knife and Fork Club account was worthless at least to the extent of $10,199.65, and plaintiff was therefore entitled to a bad debt deduction for the fiscal year ending September 30, 1961, of that amount. It is undisputed that as of September 30, 1961, the Knife and Fork Club account was worthless at least to the extent of $10,199.65, and had said amount been added to the bad debt reserve in that year, plaintiff would have been entitled, under § 166(c) to a deduction from its income for that fiscal year.

It would be to the plaintiff's advantage to be able to deduct the bad debt loss for the year ending September 30, 1961, so that the net operating loss which would result for that year could be used to offset plaintiff's taxable gain for the year ending September 30, 1958, under the

---

1. The controversy relates to the income tax return filed for the year ending September 30, 1961. The plaintiff's claim for taxes paid in 1958 arose because of the three-year loss carry-back provision. § 172 Int.Rev.Code. of 1954.

2. § 166. *Bad debts*
    *(a) General rule—*
    *(1) Wholly worthless debts.*—There shall be allowed as a deduction any debt which becomes worthless within the taxable year.

*(2) Partially worthless debts.*—When satisfied that a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.

\* \* \* \* \*

*(c) Reserve for bad debts.*—In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts.

three-year loss carryback provision. § 172 Int.Rev.Code of 1954. Because of net operating losses sustained by plaintiff in years subsequent to 1958, plaintiff would receive no tax benefits if the bad debt loss were allowed as a deduction in years subsequent to 1961.

Following the disallowance of its claim for a refund of taxes paid for the year ending September 30, 1958, plaintiff brought this action.

Defendant contends that plaintiff is not entitled to a refund since, under the Income Tax Regulations when an estimated addition to a reserve for bad debts for a prior year is inadequate, the appropriate procedure is to reflect the inadequacy in the determination of the current year's addition to the reserve for bad debts.[3]

Plaintiff contends that the regulation in question has no applicability to its claim and argues that the amount of its reserve, $3,500.00, was adequate. Plaintiff asserts that the appropriate procedure is to charge $10,199.-65 against its reserve and to credit its accounts receivable for that amount, and then to debit bad debt expense for $10,-199.65 and to credit the reserve account for that amount, bringing the reserve account back up to $3,500.00. Assuming arguendo that plaintiff can reopen its 1961 books and tax return for the purpose of charging off the Knife and Fork Club bad debt, this would not entitle it to a deduction. Under the reserve method, deductions are only available for additions to the reserve and are not available for charges against the reserve. § 166 (c) Int.Rev.Code of 1954. Regulation 1.166–4(b) (2) provides that additions to the reserve account required by in-

accurate estimates shall be made in the current year. Thus, even if the plaintiff were allowed to charge the bad debt against the reserve account as of September 30, 1961, resulting in a debit balance in the reserve account, plaintiff is precluded for tax purposes from crediting the reserve account to reflect that charge until the current tax year.

Plaintiff further urges that "if the Internal Revenue Service's interpretation of Reg. 1.166–4(b) (2) is allowed to stand, then any taxpayer's statute of limitations for making claims for refund which involve the reserve method of deducting bad debts will be limited to the amount of time between the filing of the tax return and the last day for that period when the tax return could have been filed."

The remedy of a taxpayer who incorrectly estimates the needed addition to the reserve for bad debts is not a claim for a refund, but a correction of the amount in the bad debt reserve through the determination of the reasonable addition to the reserve for the current year. Reg. 1.166–4(b) (2). Thus, § 6511 of the Internal Revenue Code of 1954[4] which the taxpayer relies upon as the appropriate statute of limitations has no applicability to insufficient additions to a bad debt reserve, since § 6511 only pertains to claims for credits or refunds.

Additions to a reserve for bad debts are, at best, rough approximations of the amounts that will later actually become bad debts. If a taxpayer were able to amend a prior return whenever he discovered that his estimate was not accurate and that it would be to his advantage to do so, the basic principle

---

3. § 1.166–4 Reserve for bad debts.
  (b) (2) *Correction of errors in prior estimates.*

  In the event that subsequent realizations upon outstanding debts prove to be more or less than estimated at the time of the creation of the existing reserve, the amount of the excess or inadequacy in the existing reserve shall be reflected in the determination of the reasonable ad-

dition necessary in the current taxable year.

4. § 6511(a) *Period of Limitation on Filing Claim.*
  Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed * * *

that income must be reported under the facts as they exist at the end of the tax year would be abrogated. Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383 (1931). Regulation 1.166–4(b) (2) exemplifies this tax principle by providing that corrections of past inaccurate estimates should be made in the current year. Otherwise, a taxpayer could wait three years (the period of the statute of limitations) to determine which year would be the most advantageous to deduct the amount of a particular bad debt.[5]

Plaintiff is not entitled to a refund from his taxes paid for the taxable year ending September 30, 1958, and a judgment is being entered for defendant.

---

5. Plaintiff would have been entitled to a refund if it failed to deduct from its income taxes for the year ending September 30, 1961, an amount which it actually added to its bad debt reserve account for that year. Mill Factors Corp. v. Commissioner of Internal Revenue, 14 T.C. 1366 (1950). By making an appropriate addition to its reserve account, a taxpayer establishes the year in which the deduction should have been taken. As a result, such a taxpayer would be unable to wait for the period of the statute of limitations to determine which year would be the most advantageous to deduct the bad debt.