**SMITH ELECTRIC COMPANY, Inc.**

v.

**The UNITED STATES.**

No. 474–69.

United States Court of Claims.
June 16, 1972.

Herman H. Copelon, New Haven, Conn., attorney of record, for plaintiffs; Copelon & Schiff, New Haven, Conn., of counsel.

Robert N. Dorosin, with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant; Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, and KUNZIG, Judges.

## OPINION

KUNZIG, Judge.*

This case is before us on a stipulation of facts. Plaintiff is suing for the recovery of Federal Income taxes for the years 1957 and 1958 in the respective amounts of $5,738.01 and $10,960.19, plus interest.

█ The sole issue in this case is whether the special seven-year statute of limitations,[1] with respect to filing claims for refund on account of the deductibility of a worthless debt, is applicable to taxpayers on the reserve method as well as to those on the direct charge-off method.

Plaintiff is an accrual basis taxpayer who utilizes the reserve method of treating bad debts. In 1960, plaintiff properly added $81,943.79 to its reserve for bad debts. The largest part of that deduction was brought about by a single worthless note ($80,050) which was charged against the reserve account during the year.

On March 11, 1966, plaintiff filed claims for refund for the taxable years 1957 and 1958 arising out of a net operating loss in 1960 due to that bad debt deduction. These claims were disallowed by the Commissioner on November 15, 1967, on the ground that they were not filed within the three-year limitation period of Section 6511 of the Internal Revenue Code of 1954.[2] Plaintiff filed his petition in this court on November 10, 1969.

### The Reserve Method

█ Under the reserve method a taxpayer is allowed to deduct each year a reasonable addition to the reserve for bad debts. The taxpayer may not, in addition to the reserve, take a deduction for specific debts. See Rogan v. Commercial Discount Co., 149 F.2d 585 (9th Cir. 1945). However, specific debts which become worthless during the taxable year are chargeable against the reserve. See Calavo, Inc. v. Commissioner of Internal Revenue, 304 F. 2d 650 (9th Cir. 1962). This indirectly results in a higher bad debt deduction because the reasonable addition to the reserve is the amount necessary to bring the balance in the reserve to its proper level. The ultimate question is always "whether the balance in the reserve at the end of the year is adequate to cover the expected worthlessness on outstanding debts * * *." Roanoke Vending Exchange, Inc., 40 T. C. 735 (1963). See also R. Gsell & Co., 34 T.C. 41, 56 (1960); Platt Trailer Co., Inc., 23 T.C. 1065 (1955).

It should be noted that a specific debt cannot be taken into account, even in this indirect manner, unless it becomes worthless during that particular taxable year. Calavo, Inc. 19 CCH Tax Ct.Mem. 1359 (1960), rev'd on other grounds, 304 F.2d 650 (9th Cir.1962); New York Water Service Corp., 12 T.C. 780 (1949); William Purvin, 6 T.C. 21 (1946). The reserve level is usually determined either by past experience or by a current evaluation of the accounts receivable and is computed as a percentage of sales or receivables.

### Statute of Limitations

Section 6511(d) provides:

(1) Seven-year period of limitation with respect to bad debts and worth-

---

* This opinion contains all the essential findings of fact as stipulated by the parties.

1. The normal statute of limitations is three years.

2. All section references hereinafter are to the Internal Revenue Code of 1954.

less securities.—If the claim for credit or refund relates to an overpayment of tax imposed by subtitle A on account of—

    (A) The deductibility by the taxpayer, under Section 166 * * * of a debt as a debt which became worthless * * *, or

    (B) The effect that the deductibility of a debt or loss described in subparagraph (A) has on the application to the taxpayer of a carryover,

in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be 7 years from the date prescribed by law for filing the return for the year with respect to which the claim is made. If the claim for credit or refund relates to an overpayment on account of the effect that the deductibility of such a debt or loss has on the application to the taxpayer of a carryback, the period shall be * * * 7 years from the date prescribed by law for filing the return for the year of the net operating loss which results in such carryback * * *.

The reason for this special statute of limitations with respect to bad debts was enunciated in the Committee Report to the Revenue Act of 1942. (Section 322(b) (5) of the Internal Revenue Code of 1939 was the predecessor section to Section 6511(d) (1) and was added by Section 169(a) of the Revenue Act of 1942, c. 619, 56 Stat. 798.) H.R. Rep. No. 2333, 77th Cong., 2d Sess. 44–45 (1942–2 Cum.Bull. 372, 408).

Under the existing law, the taxpayer may be whipsawed out of a deduction for a bad debt because of the uncertainty as to the time at which the debt becomes worthless. Later evidence often discloses that present decisions as to the year in which a debt becomes worthless are erroneous. For example, the taxpayer concludes that a debt has become bad and takes the deduction in that year, only to discover by later evidence that the debt actually became worthless three years previously. The statute of limitations having run on such previous year, this deduction is lost forever to the taxpayer. Conversely, where the debt actually became worthless in a year later than the year chosen by the taxpayer, the 3-year statute of limitations may operate against the Government.

To relieve this inequitable situation, the bill replaces the present 3-year statute of limitations in such cases with a 7-year statute, giving a considerably greater flexibility to the allowance of bad debt deductions in the proper year.

*Revision of the Reserve*

█  It is necessary for the taxpayer to determine the proper reserve level at the end of each taxable year. Estimates which are reasonably made at that time may not be increased in light of subsequent events. Farmville Oil and Fertilizer Co. v. Commissioner of Internal Revenue, 78 F.2d 83, 85 (4th Cir. 1935). See also Wengel, Inc. v. United States, 306 F.Supp. 121 (E.D.Mich.1969); Consolidated Dry Goods Co. v. United States, 35 F.Supp. 523 (D.Mass.1940); Rio Grande Building and Loan Assoc., 36 T.C. 657 (1961). Otherwise taxpayer would be able to go back and increase his reserve on account of debts which went bad in subsequent years, thereby deducting them by way of the reserve in a year prior to the one in which they became worthless. Farmville Oil and Fertilizer Co., *supra*.

Taxpayer, must, however, be able to go back and correct the year in which he charged wholly worthless debts against the reserve.[3] The reason for the differ-

---

3. The instant case is distinguishable from Wengel, Inc., *supra* wherein taxpayer was not permitted to amend his return to make an addition to his reserve for a *partially* worthless debt on the ground that to permit such an amendment would allow the taxpayer to determine which year would be most advantageous to have the deduction. The rule with respect to partially worthless debts is the same for

ence in treatment is because "debts may not be charged off against the reserve until they have become worthless." Calavo, Inc. v. Commissioner of Internal Revenue, 304 F.2d at 654. Both taxpayers using the direct charge-off method and those utilizing the reserve method must chargeoff specific debts in the year they become worthless. Those on the reserve method charge the debts against the reserve account rather than directly against income. Both taxpayers, however, are equally vulnerable to being whipsawed by having the Commissioner disallow in year 5 a debt which was charged off (against income or reserve) in year 2, on the grounds that it went bad in year 1. We feel that Section 6511(d) granted the seven-year statute of limitations to both taxpayers since the whipsaw problem afflicts them both equally.

Defendant contends that a taxpayer under the reserve method can support his addition to his reserve by relying on past experience with accounts as a composite and that he may make adjustments in later years to reflect an inadequacy in the reserve. This is true with respect to the total reserve balance. But as shown above, defendant's contention is erroneous with reference to specific debts charged against the reserve which have become worthless during a preceding taxable year. Plaintiff cannot make this adjustment in some later year. Plaintiff is permitted to charge worthless accounts against the reserve *only* in the year they become worthless.

Defendant has suggested that taxpayer's remedy is to increase the addition to the reserve in the taxable year in which he discovers the inadequacy of his estimate. Defendant's argument leads to an absurd result.

*Example*: T charges a specific debt against the reserve in year 2. In year 5 the Commissioner challenges the addition to the reserve on the ground that this specific debt actually became worthless in year 1. If the Commissioner prevails, T's addition to the reserve for year 2 would be decreased. Since the charges against the reserve for the bad debts would also be decreased by the same amount, the reserve balance would remain the same. The regular statute of limitations would bar a claim for refund with respect to year 1. Defendant argues that T could *not* utilize the special seven-year statute and should therefore increase the addition to his reserve in year 5, a year totally unrelated to the debt becoming worthless.

We cannot subscribe to such a rule of law. If the debt became worthless in year 1, that should be the only year in which it could be charged against the reserve.

*Statutory Interpretation*

Congress has seen fit to grant a special seven-year statute of limitations with respect to bad debts. Section 6511(d) (1) (A) refers to any debts under Section 166, not just those deductible under Section 166(a) (direct charge-off method). There is nothing in the statute itself, nor in the legislative history, to indicate that the special statute of limitations is to be limited to taxpayers utilizing the direct charge-off method.

[T]he plain, obvious and rational meaning of a statute is to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover. Lynch v. Al-

taxpayers utilizing the direct charge-off method. They may only take as a deduction such portion of the debt which they have "charged off within the taxable year." (Section 166(a) (2).) It is, therefore, necessary not only that the debt became partially worthless in a giv-

en year, but that the taxpayer ascertained this fact and made the accounting entry within the taxable year. These latter criteria are not necessary with respect to wholly worthless debts (for taxpayers using either method).

worth-Stephens Co., 267 U.S. 364, 370, 45 S.Ct. 274, 276, 69 L.Ed. 660 (1925).

We feel that it is abundantly clear that the language of this statute evidences a Congressional intent to make the special statute of limitations applicable to taxpayers using either the direct charge-off or the reserve method of accounting for bad debts.

### CONCLUSION OF LAW

Upon the foregoing opinion, which contains the essential findings of fact as stipulated by the parties, the court concludes as a matter of law that plaintiff's claims for refund for the years 1957 and 1958 should be allowed and judgment is entered for the plaintiff for $5,738.01 and $10,960.19, respectively, together with interest thereon, as provided by law.