WINTER & HIRSCH, INC.

v.

The UNITED STATES.

No. 206–75.

United States Court of Claims.

Feb. 22, 1978.

Roger B. Harris, Chicago, Ill., Attorney of record, for plaintiff. David V. Kahn, Howard Friedman, John F. Prusiecki, and Altheimer & Gray, Chicago, Ill., of counsel.

Kenneth R. Boiarsky, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant. Theodore D. Peyser, Washington, D. C., of counsel.

Before DAVIS, KASHIWA, and BENNETT, JJ.

## ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

KASHIWA, Judge.

This tax refund suit is before the court on defendant's motion for partial summary judgment. Plaintiff claims it is entitled to an additional deduction in fiscal year 1963 of $661,386.28 as a reasonable addition to its bad debts reserve on account of debts which admittedly became worthless in prior taxable years. Defendant maintains plaintiff is not so entitled. After careful consideration of the briefs and oral arguments, we grant defendant's motion for partial summary judgment.

The plaintiff is a corporation which ceased doing active business in 1970. Prior to that time, plaintiff was in the business of making consumer loans, primarily to finance consumer purchases of automobiles. At all relevant times plaintiff filed its federal income tax returns on the basis of a fiscal year ending August 31 and used the reserve for bad debts method to compute its deduction for bad debts.

At some time after 1969 plaintiff discovered that certain debts owed to it, which had become worthless in periods prior to the 1963 taxable year and which had been charged off in its underlying records during those periods, had not been taken into account for tax purposes either as deductions or in computing taxpayer's bad debts reserve. These debts, amounting to at least $661,386.28,[1] were not taken into account for tax purposes by reason of a scheme to

---

1. Although plaintiff's original petition alleged a figure in excess of $661,386.28, we will limit our discussion to $661,386.28 for if plaintiff can deduct this additional amount in fiscal 1963, the 1963 net operating loss carryback will be sufficient to wipe out plaintiff's entire income tax liabilities for fiscal years 1960, 1961, and 1962.

defraud which had been perpetrated upon plaintiff by its key officers from 1957 to 1969 with the active cooperation of the certified public accountants retained during that time.

On October 15, 1970, taxpayer timely filed claims for refund for its 1960, 1961, and 1962 taxable years on the ground that it had overpaid its taxes for those years as a result of a net operating loss carryback from its 1963 taxable year. The alleged 1963 net operating loss resulted from an increased bad debts deduction to which taxpayer claims it is entitled. Taxpayer asserts that its bad debt deduction for 1963 should be increased by $661,386.28, from $671,541.51 to $1,332,927.79, as a result of decreasing its ending bad debts reserve balance for 1962 by $661,386.28 for the debts which admittedly became worthless in taxable years prior to fiscal 1963.

The defendant agrees that plaintiff's proper ending bad debts reserve balance for 1963 is $892,079.15. Defendant also agrees that $624,194.73 of plaintiff's receivables became worthless during fiscal 1963. However, defendant does not agree that plaintiff's 1962 ending bad debts reserve balance was reduced from $844,732.37 to $183,346.09 because of the $661,386.28 of receivables which had become worthless in prior years. Therefore, the Commissioner failed to act upon plaintiff's refund claims.

The issue for our decision is whether a taxpayer using the reserve method of computing its bad debts deduction can subtract debts, which admittedly became worthless in prior taxable years (but which were not accounted for in the prior years), from the bad debts reserve in computing its current year's bad debt deduction. We hold a taxpayer cannot do so.

Internal Revenue Code[2] § 166 authorizes a deduction for bad debts. Two mutually exclusive methods of computing the deduction are allowed by the Code: the direct charge off method[3] and the reserve meth-

od.[4] Under the direct charge off method the taxpayer is authorized to deduct from gross income the amount of receivables which become worthless during the taxable year for which the return is being filed. If a debt becomes worthless during a year, the related deduction must be taken *only* on that year's return and not for some later year. I.R.C. § 166(a).

The reserve method authorizes the taxpayer to deduct from gross income, in lieu of the amount of receivables which became worthless during the taxable year, a "reasonable addition" to the reserve for bad debts. I.R.C. § 166(c). The amount of the "reasonable addition" to the bad debts reserve in any taxable year will depend upon the three elements which compose the reserve method formula: the prior taxable year's ending bad debts reserve balance; the amount of receivables which become worthless during the current taxable year; and the current taxable year's ending bad debts reserve balance. The prior year's ending bad debts reserve balance is determined by looking at the total receivables on hand at the end of the prior taxable year and estimating, upon the basis of past experience or an evaluation of the receivables, the amount of them which will eventually become worthless. This estimated amount becomes the prior year's bad debts reserve balance. As receivables actually become worthless during the succeeding taxable year, they are subtracted from the prior year's ending bad debts reserve balance, which lowers the bad debts reserve balance. The current year's ending bad debts reserve balance is computed in the same fashion as the prior year's ending bad debts reserve balance, except it is based upon the total amount of receivables on hand at the end of the current taxable year. To compute the "reasonable addition" (deduction) for the current taxable year, one subtracts the prior taxable year's ending bad debts reserve balance, after it has been reduced by the amount of receivables which actually be-

---

**2.** Hereinafter all Internal Revenue Code sections will be cited I.R.C. and will be to the 1954 Code as amended, unless otherwise stated.

**3.** I.R.C. § 166(a).

**4.** I.R.C. § 166(c).

came worthless during the current taxable year, from the current taxable year's ending bad debts reserve balance. *See Smith Electric Co. v. United States*, 461 F.2d 790, 791, 198 Ct.Cl. 644, 646 (1972); Mertens, *Law of Federal Income Taxation*, § 30.69 *et seq.* (Doheny Rev.1975).

In this case the parties differ over the prior taxable year's (fiscal 1962) ending bad debts reserve balance. Plaintiff contends it is $183,346.09. This is so according to plaintiff because the $844,732.37 balance reflected on its accounting records had been automatically reduced by the $661,386.28 of receivables which became worthless in the prior tax years and were not subtracted from the bad debts reserve account. In making this contention plaintiff specifically states that there is no accounting or charge off required on the taxpayer's books before the prior taxable year's bad debts reserve is automatically decreased by worthless debts.

Defendant maintains plaintiff's fiscal 1962 bad debts reserve balance was not automatically reduced by the $661,386.28 of prior years' worthless receivables, but instead remained at $844,732.37. We agree with the defendant. In doing so we add that we agree with the plaintiff's contention that there is presently no charge off requirement in determining whether a debt has become worthless during a certain tax year.[5] I.R.C. § 166(a)(1). However, this is not the issue before us in this case for the parties have agreed that the $661,386.28 of worthless receivables became worthless in taxable years other than fiscal 1963. The issue in this case is in which taxable year must an admittedly worthless debt be

accounted for in computing the bad debts deduction under the reserve method—the year in which the debt became worthless or a later year.[6]

We hold that an admittedly worthless receivable must be accounted for by the taxpayer in computing its bad debt deduction in the year in which it became worthless. This is so regardless of whether the taxpayer is on the reserve method or the direct charge off method of computing its bad debts deduction. To hold otherwise would be an open invitation to reserve method taxpayers to distort their taxable income. Such taxpayers could distort their taxable income by manipulating their bad debts deduction. They could make an inadequate addition to the reserve for bad debts in one year and an excessive addition in some future high income year, when the worthless debts from prior taxable years were finally charged off against the reserve for bad debts. *Fibre Yarn Co. v. Commissioner*, 10 BTA 479, 481 (1928); Mertens, *Law of Federal Income Taxation*, § 30.73 (Doheny Rev.1975). Further, to hold differently in this case would allow this plaintiff, by means of the net operating loss provision, I.R.C. § 172, to subvert the statute of limitations on refunds, I.R.C. § 6511(d), and open up closed tax years.[7]

The rationale behind our decision in *Smith Electric, supra,* supports our decision. The question before this court in *Smith Electric* was whether the special seven-year statute of limitations in I.R.C. § 6511(d) applied to taxpayers on the reserve method as well as those on the direct charge off

---

5. There is still a charge off requirement in the case of partially worthless debt. I.R.C. § 166(a)(2).

6. In holding this to be the real issue for decision, we reject plaintiff's "automatic reduction" of the prior year's bad debts reserve balance analysis. The reason is there is no substantive value in such an analysis for the effect is the same as if plaintiff had charged the worthless receivables from prior years to the bad debts reserve during the 1963 taxable year. The end result is identical; plaintiff would get a large increase in its fiscal 1963 bad debts deduction.

7. Plaintiff filed the claim for refund in this case October 15, 1970. At that time refund claims for plaintiff's fiscal 1960, 1961, and 1962 tax years were barred by the statute of limitations. I.R.C. § 6511(d)(1). The only way in which the plaintiff could obtain a refund of taxes paid in those years was by claiming a large bad debts deduction in fiscal 1963. This in turn generated a net operating loss which plaintiff could carry back under the net operating loss provision, I.R.C. § 172, to fiscal years 1960, 1961, and 1962 and the exception to the statute of limitations for net operating loss carrybacks. I.R.C. § 6511(d)(1) and (2).

method. There we analyzed and compared the operation of the direct charge off method and the reserve method. We found that

   \* \* \* Both taxpayers using the direct charge-off method and those utilizing the reserve method must charge-off specific debts in the year they become worthless. \* \* \*

   \*    \*    \*    \*    \*    \*

   \* \* \* [The taxpayer] cannot make this adjustment in some later year. [The taxpayer] is permitted to charge worthless accounts against the reserve *only* in the year they become worthless. [Emphasis in original text.] [*Smith Electric Co., supra* 461 F.2d at 793, 198 Ct.Cl. at 648–649.]

Because both methods required the worthless receivable be charged off in the year it became worthless, we concluded in *Smith Electric* that the same statute of limitations was applicable to both methods. This was necessarily so in our opinion because the same risk of charging off a worthless debt in a year other than the year it actually became worthless was inherent in both methods.

### CONCLUSION

   Plaintiff, a reserve method taxpayer, cannot account for the $661,386.28 of worthless receivables in computing its fiscal 1963 bad debts deduction, because the receivables admittedly became worthless in prior taxable years. Therefore, we grant defendant's motion for partial summary judgment. Since this is the sole ground upon which plaintiff relies in seeking a refund for taxable years 1960, 1961, and 1962, we deny the claims for refund for those taxable years and dismiss the petition.