SEARS IMPORTED AUTOS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sears Imported Autos, Inc. v. Commissioner
Docket No. 13764-90
United States Tax Court
T.C. Memo 1992-307; 1992 Tax Ct. Memo LEXIS 333; 63 T.C.M. (CCH) 3075; June 1, 1992, Filed *333 Decision will be entered under Rule 155. Saul A. Bernick and Neal J. Shapiro, for petitioner. Ellen T. Friberg, for respondent. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $ 49,024.80 in petitioner's Federal income tax for 1986 and additions to tax of $ 2,451 and 50 percent of the interest due on $ 49,024.80 under section 6653(a)(1)(A) and (a)(1)(B), respectively. The issues for decision are (1) whether petitioner is entitled to a deduction for an addition to its reserve for bad debts in the amount that it claimed on its Federal income tax return for 1986 and (2) whether petitioner is liable for the additions to tax for negligence. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1986, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated, and the facts set forth in the stipulations are incorporated in our findings by this reference. Sears Imported Autos, Inc. (petitioner), was a corporation with its principal place of business in Minnesota on the date the petition was filed. Petitioner *334 sold new and used Mercedes-Benz, BMW, Rolls Royce, and Bentley automobiles and operated a parts and service department. Donald Sears (Sears) was the majority shareholder and the president of petitioner. In early 1986, Sears hired Steven Johnson (Johnson) to supervise its parts and service department. Johnson had previously worked for BMW and had consulted with automobile dealerships in the course of that employment. In late 1986, Johnson realized that petitioner had problems with its receivables in its accounts for the parts and service department (parts and service account). Johnson discovered that petitioner had receivables in its parts and service account that were 1 and 2 years old. As of December 31, 1986, petitioner had $ 249,187.18 in receivables in its parts and service account, $ 180,011.29 of which were for items sold and services rendered more than 90 days earlier. Prior to 1986, petitioner's books reflected that the amount of receivables in petitioner's parts and service account that were more than 90 days old was zero or an insignificant amount. The increase in that category of receivables resulted from petitioner's bookkeeper's failure to send to customers statements *335 of amounts owed for the purchase of parts from or services performed by the parts and service department. Petitioner's bookkeeper was experiencing personal and health problems. In or about October 1986, Sears hired John LaVold (LaVold), a certified public accountant, to "straighten out" the problems with petitioner's receivables in its parts and service account. Statements reflecting the receivables with respect to which customers had not previously been billed were sent to most customers in November and December 1986. Johnson stated to LaVold at that time that he felt that petitioner would be "lucky" to receive payment on half of those billings. Because of the length of time between the date that parts were purchased or services were rendered and the date that the statements were sent to customers, some of the customers questioned the amounts owed and requested documentation to support the statements. In some instances, it took petitioner several months to locate the supporting documentation. Petitioner made adjustments to some of the statements. Most of the customers that requested and received such documentation, however, paid the amounts that they owed. For 1981 through *336 1986, petitioner used the reserve method of accounting for bad debts for both book and tax accounting purposes. For internal accounting purposes, LaVold determined that petitioner's reserve for bad debts should be adjusted to reflect receivables that were more than 90 days old and that had been discovered in 1986. He decided that the proper amount of the addition to the reserve for bad debts was $ 137,599.84, $ 3,500 of which was "warranty claims bad debt" and $ 134,099.84 of which was "customer bad debt". LaVold did not discuss with petitioner's Federal income tax return preparer whether the amount of the addition to the bad debt reserve for that year was proper. Rather, LaVold based his determination on what he understood to be guidelines provided to petitioner by Mercedes-Benz and BMW. LaVold also believed that the amount of the addition was consistent with generally accepted accounting principles. According to the "Mercedes-Benz Dealer Manual Standard Accounting System", it was that company's policy that amounts in a dealership's accounts receivable accounts that were more than 90 days old should be written-off the balance sheet. BMW had a similar policy. The Mercedes-Benz *337 manual also stated that "All past due accounts should be followed up, either by phone or letter, to determine why the account was not paid." The accounting firm of Richard Reiss (Reiss), a certified public accountant, prepared petitioner's Federal corporate income tax returns for 1981 through 1986. A member of Reiss' firm prepared a summary based on schedules that LaVold had prepared for internal accounting purposes and had used to determine the amount of the addition to the reserve for bad debts for 1986. That summary reflected: (1) That the beginning balance of the reserve was $ 20,000, (2) that there was an adjustment in the amount of $ 4,099.84, (3) that there was an addition to the reserve in the amount of $ 137,599.84, and (4) that the ending balance of the reserve was $ 153,500. In the course of the preparation of petitioner's Federal corporate income tax return for 1986 (1986 Form 1120), Reiss brought to petitioner's attention that the amount of the addition to the reserve for bad debts for 1986 deviated significantly from the amount of the addition in prior years. The schedules that petitioner turned over to Reiss' firm and upon which the Federal corporate income tax *338 returns for 1981 through 1985 were prepared reflected that the amount of receivables in petitioner's parts and service account that were more than 90 days old was zero or was an insignificant amount. Petitioner explained to Reiss the problems that it had discovered with respect to that account. Reiss then concluded that the amount of the addition to the reserve was reasonable and in accordance with generally accepted accounting principles. Sears relied on Reiss' conclusion that the amount of the addition was proper. On its 1986 Form 1120, petitioner claimed a deduction of $ 137,600 for bad debts. Schedule F (Bad Debts -- Reserve Method) reflected the following: Amounts added to reserve
Trade notes
and accounts
Reserve
receivable
Amount
of bad
outstanding
Current
charged
debts at
at end of
Sales
year's
against
end of
Year
year
on account
provisions
Recoveries
reserve
year
1981
$ 120,145
$ 13,092,305
$ 20,471
$ 16,661
$ 37,132
$ 15,000
1982
101,033
13,578,465
34,538
7,050
41,588
15,000
1983
114,417
14,589,686
-0-  17,388
17,388
15,000
1984
267,751
16,786,218
17,773
4,000
16,773
20,000
1985
303,004
17,678,587
24,598
608
25,206
20,000
1986
432,762
20,964,137
137,600
-0- 4,100
153,500
*339 On petitioner's Federal corporate income tax return for 1987 (1987 Form 1120), petitioner claimed a deduction of $ 7,973 for bad debts. In the notice of deficiency, respondent determined that the proper amount of the addition to petitioner's reserve for bad debts for 1986 was $ 31,025. Respondent's computation was as follows: Year
Receivables
Bad Debts Net
Ratio of Losses
1981
$ 120,145  $ 20,471
17.04%
1982
101,033
34,538
34.18%
1983
114,417
0%
1984
267,751
12,773
4.77%
1985
303,004
24,598
8.12%
1986
432,762
4,100
.95%
$ 1,339,112
$ 96,480
10.84%
Accounts and Notes Receivable December 31, 1986
$ 432,762
Reserve on December 31, 1986 as adjusted
46,925
Add: Losses charged to reserve in 1986
$ 4,100
Less recoveries    -0- 4,100
Total Reserve requirement
$ 51,025 Deduct Reserve as adjusted December 31, 1985
20,000
Allowable addition to Reserve
$31,025 Respondent also determined that a portion of the underpayment was due to negligence or intentional disregard of rules and regulations. OPINION Reserve for Bad Debts
Section 166(a) allows a deduction for any debt that becomes worthless within the taxable *340 year. Prior to its repeal by the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, section 166(c) permitted an accrual basis taxpayer to account for bad debts by the reserve method of accounting. Taxpayers were allowed, at the discretion of the Commissioner, a deduction for a "reasonable addition" to a reserve for bad debts in lieu of deducting specific bad debts that became worthless during the year. The question of whether a debt becomes worthless during a taxable year is to be determined on the basis of all of the surrounding facts and circumstances. Mueller v. Commissioner, 60 T.C. 36, 41 (1973), affd. on this issue and revd. in part 496 F.2d 899 (5th Cir. 1974). When the debt actually becomes worthless, the taxpayer reduces the reserve by the amount of the particular worthless debt. Roth Steel Tube Co. v. Commissioner, 620 F.2d 1176, 1178 (6th Cir. 1980), affg. 68 T.C. 213 (1977). A reserve for bad debts is essentially an estimate of future losses that can reasonably be expected to result from debts outstanding at the close of the taxable year. Handelman v. Commissioner, 36 T.C. 560, 565 (1961). *341 Thus a "reasonable addition" is the "amount necessary to bring the reserve balance up to the level that can be expected to cover losses properly anticipated on debts outstanding at the end of the tax year." Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 546 (1979). What constitutes a "reasonable addition" to a bad debt reserve depends on the facts and circumstances, including the nature of the business, general business conditions, past experience in collecting accounts and bad debts, and the amount of the existing reserve. Mill Factors Corp. v. Commissioner, 14 T.C. 1366, 1372 (1950). See Black Motor Co. v. Commissioner, 41 B.T.A. 300, 304 (1940), affd. on other grounds 125 F.2d 977 (6th Cir. 1942). See also sec. 1.166-4(b)(1), Income Tax Regs. If the existing reserve is already adequate to cover expected losses, any further additions will be considered unreasonable and thus not deductible. James A. Messer Co. v. Commissioner, 57 T.C. 848, 864 (1972). Where the Commissioner has challenged the reasonableness of an addition to a reserve for bad debts, the taxpayer must show not *342 only that his own computation was reasonable but also that the Commissioner's computation was unreasonble and arbitrary. Thor Power Tool Co. v. Commissioner, 439 U.S. at 547-548; Westchester Development Co. v. Commissioner, 63 T.C. 198, 211 (1974). In this case, respondent relied on the formula approved in Black Motor Co. v. Commissioner, supra.The Black Motor formula bases the addition on the arithmetic average of the taxpayer's total receivables and bad debt losses during the previous 6 years. (Respondent's computation of that arithmetic average in the notice of deficiency, as set forth in our findings of fact, was erroneous but that error was to respondent's detriment and does not affect our conclusion.) Maier Brewing Co. v. Commissioner, T.C. Memo. 1987-385, affd. without published opinion 916 F.2d 716 (9th Cir. 1990). In Thor Power Tool Co. v. Commissioner, supra, the Supreme Court upheld the validity of that formula but explained that there were circumstances in which its application would not produce a reasonable addition: If a taxpayer's *343 most recent bad-debt experience is unrepresentative for some reason, a formula using that experience as data cannot be expected to produce a "reasonable" addition for the current year. If the taxpayer suffers an extraordinary credit reversal (the bankruptcy of a major customer, for example), the "six-year moving average" formula will fail. In such a case, where the taxpayer can point to conditions that will cause future debt collections to be less likely than in the past, the taxpayer is entitled to -- and the Commissioner is prepared to allow -- an addition larger than Black Motor would call for. * * * [Thor Power Tool Co. v. Commissioner, 439 U.S. at 549; fn. refs. omitted.]
Petitioner contends that the conditions that it discovered existed at the end of 1986 establish both the reasonableness of its addition to its reserve for bad debts and the unreasonableness of respondent's application of the Black Motor formula for 1986. Petitioner discovered sometime in late 1986 that the amount of receivables in its parts and service account that were more than 90 days old had increased significantly. Petitioner thus contends: The company, with good *344 reason, believed that the likelihood of collecting the accounts was poor at best. It therefore chose to increase its reserves by a substantial amount at the close of 1986. The company reserved all receivables over 90 days.
For the reasons discussed below, we conclude that petitioner failed to prove that the likelihood of collecting those receivables was "doubtful" or that it had "good reason" to believe that the likelihood of collecting those receivables was "doubtful". First, we reject petitioner's assertion that it "determined", at the time that the decision as to the amount of the addition to petitioner's reserve for bad debts was made, that its receivables that were more than 90 days old were not collectible. Although Johnson had worked for BMW prior to the time that he was employed by petitioner and had consulted with dealers in the course of that employment, he did not indicate that he had any experience in handling problems similar to those that petitioner discovered in late 1986 and that caused the increase in the amount of its receivables that were more than 90 days old. We therefore give little weight to Johnson's statement to LaVold that he felt that petitioner *345 would be "lucky" to receive payment on half of those receivables with respect to which petitioner had sent statements of amounts owed to customers at the end of 1986. Also, Johnson was not directly involved in the decision as to the amount of the addition to petitioner's reserve for bad debts. That decision rested with LaVold. LaVold's "determination" that petitioner's reserve for bad debts should be adjusted to reflect receivables that were more than 90 days old and that had been discovered in 1986 was based on what he understood to be the guidelines provided to petitioner by Mercedes-Benz. Petitioner offered the testimony and report of Johnson at trial to establish that those guidelines, which recommended that such receivables were to be written-off the dealer's balance sheet, were in turn consistent with "the industry standard for reserving bad debts". Because of Johnson's failure to state the facts or data upon which his opinion was based and lack of experience involving unbilled receivables, we did not receive Johnson's report in evidence. See Rule 143(f). In any event, even were we to conclude that LaVold's determination for internal accounting purposes was consistent *346 with such industry standards and the Mercedes-Benz and BMW guidelines, it would not follow that the addition was "reasonable" for Federal income tax purposes. Compare McCamant v. Commissioner, 32 T.C. 824, 826-827, 836-837 (1959) with Richardson v. United States, 330 F. Supp. 102 (S.D. Tex. 1971). The reasonableness of an addition is to be determined on the basis of all the facts and circumstances at the end of the year. Mill Factors Corp. v. Commissioner, 14 T.C. 1366, 1372 (1950). Here, as petitioner states in its brief, "Petitioner decided to adopt the standards of Mercedes-Benz, BMW, and the automobile industry." Thus petitioner did not consider any of the other facts and circumstances that existed at the end of 1986. Compare Duffey v. Lethert, 11 AFTR 2d 1317, 63-1 USTC par. 9442 (D. Minn. 1963). Also, the facts in this case are materially distinguishable from the facts in cases that led this and other courts to conclude that the taxpayers' additions to their bad debt reserve were "reasonable". For example, in Westchester Development Co. v. Commissioner, 63 T.C. 198 (1974), *347 the taxpayer, which had begun operations in the fiscal year preceding the first taxable year there in issue, made an addition to its reserve for bad debts based on the recommendation of a certified public accounting firm. The accounting firm had analyzed the financial stability and general history of the parties that were indebted to the taxpayer. On those facts, we concluded that the taxpayer's addition was not unreasonable and that the taxpayer's bad debt experience was "wholly unrepresentative" of the prior period. Westchester Development Co. v. Commissioner, 63 T.C. at 212. In contrast, petitioner has failed to prove that its prior bad debt experience was unrepresentative of the current period. As discussed, petitioner did not determine at the end of 1986 that any of its customers were unable to pay to petitioner any of the amounts that they owed. The only determination that was made at that time was that some of its receivables were more than 90 days old. The mere aging of receivables, without more, is not sufficient to establish the likelihood that petitioner would not receive payments or that an addition to the reserve for bad debts was reasonable. *348 See Valmont Industries, Inc. v. Commissioner, 73 T.C. 1059, 1069 (1980). This is particularly apt in this case, where petitioner had sent to its customers statements of amounts owed for the first time in November or December 1986. Compare, e.g., Drew v. Commissioner, T.C. Memo. 1972-40. We recognize that it is not implausible that some of petitioner's customers would refuse to pay to petitioner the amounts that they owed. Some of those customers requested supporting documentation upon the receipt of their statements. Petitioner does not contend, however, that any of its customers ever contested that they owed certain amounts or that they refused to pay, and we found that most of the customers that requested and received such documentation paid the amount due. Petitioner did make adjustments to some of the statements. It seems to us, however, that this would increase, and not cast doubt upon, the collectibility of amounts that customers owed to petitioner. Petitioner did not establish that it had any other reason to doubt the collectibility of those amounts. See Josten's, Inc. v. Commissioner, T.C. Memo. 1989-656, *349 affd. 956 F.2d 175 (8th Cir. 1992). Petitioner also cites section 1.166-4(b)(2), Income Tax Regs., and asserts that that regulation "compelled" it to add to its reserve those receivables that were more than 90 days old because it "realized in 1986 that their bad debts were more than estimated when the reserve was created." Section 1.166-4(b)(2), Income Tax Regs., provides as follows: (2) Correction of errors in prior estimates. In the event that subsequent realizations upon outstanding debts prove to be more or less than estimated at the time of the creation of the existing reserve, the amount of the excess or inadequacy in the existing reserve shall be reflected in the determination of the reasonable addition necessary in the current taxable year.
That regulation allows an addition to the reserve for bad debts where the estimate of bad debts for prior years was inadequate. See Massachusetts Business Development Corp. v. Commissioner, 52 T.C. 946, 954 n.3 (1969). Petitioner, however, offered no evidence to prove, and does not argue, that the amounts that it subsequently realized with respect to debts outstanding at the time that *350 the reserve was created (or to debts arising subsequent thereto) were less than estimated at the time that the reserve was created. Again, that petitioner "realized" in 1986 that the amount of its receivables outstanding at the end of the year had increased in 1986 does not prove that its estimate of its bad debts for the prior years was inadequate. Also, petitioner failed to prove the extent to which any of the receivables actually arose in years prior to 1986. Under these circumstances, petitioner's citation of and reliance upon the quoted regulation is inapposite. In sum, it is apparent that petitioner believed and now contends that the amount of the addition to its reserve for bad debts was "reasonable" based solely upon the increase in its receivables in its parts and service account that were more than 90 days old. That increase, however, was attributable to petitioner's failure to send to customers statements of amounts owed. Petitioner failed to prove that, once those statements were sent to its customers, the collection of the amounts therein "was doubtful" or the extent to which its prior bad debt experience was unrepresentative. There was no determination (and thus *351 there is no basis for concluding) that any of those receivables were amounts that ultimately would result in actual losses, i.e., that any of the receivables that were more than 90 days old were "bad debts" within the meaning of section 166(c). An addition to a reserve for bad debts that merely anticipates a loss is not "reasonable"; the deduction for additions to such reserves must ultimately "reflect only the amounts actually lost from worthless debts." Brooks v. Commissioner, 63 T.C. 1, 8 (1974). A taxpayer may not by his own actions render the debt uncollectible. See Roth Steel Tube Co. v. Commissioner, 620 F.2d 1176, 1181 (6th Cir. 1980), affg. 68 T.C. 213, 221 (1977). On this record, we cannot conclude that an addition to a reserve for bad debts that increased the ending balance of that reserve more than 750 percent is "reasonable" where the total receivables outstanding at the end of the year increased by less than 35 percent. Our conclusion that petitioner's addition to its reserve for bad debts was not "reasonable" is confirmed by petitioner's actual loss experience in 1987, which we may consider. See Massachusetts Business Development Corp. v. Commissioner, 52 T.C. at 954. *352 Petitioner did not attempt to establish that it actually sustained losses that approximated the amount that it added to its reserve in 1986, but petitioner claimed a deduction of only $ 7,973 for bad debts on its 1987 Form 1120. Finally, petitioner's failure to "point to conditions that * * * [would] cause future debt collections to be less likely than in the past" requires us to conclude that petitioner has also not satisfied its heavy burden of proving that respondent's application of the Black Motor formula in this case was unreasonable and arbitrary. Thor Power Tool Co. v. Commissioner, 439 U.S. at 549. We therefore sustain respondent's determination on this issue. Negligence
The second issue for decision is whether petitioner is liable for the section 6653(a) additions to tax. Section 6653(a)(1)(A) provides for an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of the rules or regulations. Section 6653(a)(1)(B) provides for a further addition to tax equal to 50 percent of the interest due on the underpayment attributable to negligence. For the purposes *353 of section 6653(a), negligence is defined as the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner bears the burden of proving that respondent's determinations are erroneous. Bixby v. Commissioner, 58 T.C. 757, 791 (1972); Rule 142(a). The parties dispute whether petitioner relied on the advice of LaVold and of Reiss that the amount of the addition to petitioner's reserve for bad debts was proper and, if so, whether such reliance relieves petitioner of the addition to tax for negligence. Respondent contends that petitioner did not exercise due care because it disregarded its prior bad debt experience and it "did not rely on its advisers to determine the correct addition to the bad debt reserve for 1986." Generally, the addition to tax for negligence is not imposed where a taxpayer's deductions are taken in good faith and based on advice of a competent tax expert. Otis v. Commissioner, 73 T.C. 671, 675 (1980), affd. without published opinion 665 F.2d 1053 (9th Cir. 1981). *354 Reliance on professional advice is not, standing alone, an absolute defense to negligence but is a factor to consider. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. on other grounds 501 U.S.    , 111 S.Ct. 2631 (1991). To insulate themselves successfully from this addition to tax, taxpayers must provide their agents with all of the relevant information necessary to prepare the return. Pessin v. Commissioner, 59 T.C. 473, 489 (1972). Petitioner hired LaVold, a certified public accountant, to "straighten out" the problems that it had with its receivables in its parts and service account as soon as those problems were discovered. LaVold prepared schedules that he used to determine the amount of the addition to the reserve for bad debts for internal accounting purposes in 1986 and concluded that the amount of the addition was consistent with guidelines provided to petitioner by Mercedes-Benz and in accordance with generally accepted accounting principles. Petitioner then gave those schedules to a member of Reiss' accounting firm who prepared a summary used in *355 the preparation of petitioner's 1986 Form 1120. The amount of the addition to the reserve for bad debts thus did not result from the taxpayer's failure to supply the return preparer with complete and accurate information. Compare Edison Homes, Inc. v. Commissioner, T.C. Memo. 1988-441, affd. 903 F.2d 579 (8th Cir. 1990). Also, Sears relied on Reiss' conclusion that the amount of the addition was proper. Although Reiss, a certified public accountant, did not personally compute the amount of the addition to the reserve, he testified as follows: Q. Did you deal with the company at all about that amount? Did you consult with the company? A. Well, in preparation of the tax return I questioned them because it was such a deviant amount from the previous year. I brought it to their attention and they explained to me what the situation was as far as the problem with the receivables. * * * Q. Did you believe that the one fifty-three thousand five hundred dollar amount was reasonable? A. Yes I did. Q. And was that subject to generally accepted accounting standards? A. Absolutely.
That the amount of the addition was subsequently determined *356 by this Court to be unsupported by the record does not render petitioner's reliance on Reiss' advice unreasonable. See Jackson v. Commissioner, 86 T.C. 492, 539 (1986), affd. 864 F.2d 1521 (10th Cir. 1989). Under these circumstances, petitioner is not liable for the additions to tax under section 6653(a)(1)(A) and (a)(1)(B). To reflect the foregoing, Decision will be entered under Rule 155.