**LANNOM MANUFACTURING COMPANY, INC., Petitioner,**

v.

**UNITED STATES INTERNATIONAL TRADE COMMISSION, Respondent.**

**Appeal No. 85–2558.**

United States Court of Appeals, Federal Circuit.

Aug. 27, 1986.

Nathaniel Humphries (argued), Mason, Fenwick & Lawrence, Washington, D.C., for appellant; with him on brief were Paul F. Kilmer and Linda J. Shapiro. Also on brief were Michael A. Hertzberg, Stuart E. Benson and Gary W. Christian, Graham & James, Washington, D.C.

Jack Simmons, III (argued), Office of the General Counsel, U.S. Intern. Trade Com'n, Washington, D.C., for appellee; with him on brief were Lyn M. Schlitt and Michael P. Mabile.

Before FRIEDMAN, BALDWIN, and PAULINE NEWMAN, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Lannom Manufacturing Company, Inc. appeals the final decision of the United States International Trade Commission, which held that there was no violation of section 337 of the Tariff Act of 1930 as amended, 19 U.S.C. § 1337, in that Lannom's U.S. Patent No. 3,976,295 ("the '295 patent") was invalid and that the importation and sale of certain articles did not tend to injure the domestic industry. The Commission declined to determine infringement. *In re Certain Softballs and Polyurethane Cores Therefor,* Inv. No. 337–TA–190, USITC Pub. No. 1751 (September 1985).

We vacate the determinations of patent invalidity and absence of tendency to injure, and remand for determination of the question of infringement and redetermination of the question of injury.

### Commission Proceedings

On April 3, 1984 Lannom filed a complaint pursuant to section 337 alleging, *inter alia,* unfair methods of competition and unfair acts in the importation and sale of certain softballs and polyurethane cores for softballs, by the direct or contributory infringement of claims 3, 4, and 5 of the '295 patent, having the effect or tendency to destroy or to substantially injure an efficiently and economically operated industry in the United States.

The '295 patent describes and claims a softball usable for organized league play, having a core of polyurethane foam and a leather cover. Claim 3 is representative:

3. A composite ball having the appearance, physical characteristics and dimensions of a conventional softball including a core of cork or kapok, yarn windings, and a leather cover comprising

a spherical core member formed of flexible and resilient molded polyurethane foam and a leather cover portion enclosing and stitched over said core portion

wherein said core portion is formed of polyurethane foam of such density and resilience as to give said composite ball essentially the same rebound weight, hardness, size, feel and sound qualities as said conventional softball so as to be usable in organized league play of softball.

The advantages of this softball are that it is five to ten times more durable than conventional cork or kapok softballs, and its resilience or liveliness can be varied by manipulation of the chemical composition of the core. Polyurethane core softballs, since their introduction by Lannom, have obtained a significant portion of the United States softball market.

On May 1, 1984 the Commission ordered that an investigation be instituted, in accord with 19 U.S.C. § 1337(b). Lannom named as respondents the Taiwan manufacturing companies Success Chemical Company, Ltd., Tusa, Inc., and Complete Merchants Corporation; the U.S. importer Diamond Sports Company; Regent Sports Company, a U.S. manufacturer of softballs; and Diamond's eight U.S. distributors (also called manufacturer's representatives). Only Diamond Sports entered an appearance and filed a response to the complaint. This response alleged, *inter alia,* that Lannom's patent was invalid and not infringed.

Lannom and Diamond Sports filed on October 3, 1984 a joint motion to terminate the investigation as to Diamond Sports and its U.S. distributors, on the basis that Lannom had granted Diamond a license under the '295 patent. On October 19, 1984 the Administrative Law Judge ("ALJ") terminated the investigation as to Diamond but did not terminate the investigation as to Diamond's distributors because of the absence of sublicense or consent agreements. Although their status is unclear on the record, the distributors took no part either in the proceedings before the Commission or in this appeal. Lannom also asserted that it no longer considered sales to Diamond Sports by the Taiwan manufacturers Success Chemical, Complete Merchants, and Tusa to constitute unfair acts, but only sales to unlicensed importers.

The hearing began on October 30, 1984. Only Lannom and the Commission Investigative Attorney ("the Staff") appeared, the Staff participating in accordance with 19 C.F.R. § 210.4(b).[1] None of the remaining respondents appeared or defended. Lannom relied on the presumption of patent validity and asserted that patent validity was no longer at issue. Lannom requested that the remaining respondents be found in default and that adverse inferences be taken, as provided in 19 C.F.R. § 210.25. This request was rejected by the ALJ.

Evidence was adduced on the subjects of patent validity, patent infringement, and injury or tendency to injure. Among the witnesses were Jesse H. Heald, the inventor of the '295 Patent and an officer of Lannom; Charles Dale, general manager of Lannom's Ball Division; Frank Hardy, president of Diamond Sports; and Thomas Tuten of Flexible Products Co., a U.S. company that sells chemicals for forming the cores of the patented softballs. The depositions of James L. Muhlfelder, vice president of J. DeBeer & Son, a softball manufacturer and competitor of Lannom; and Lily Hsu, a Taiwan investigator hired by Lannom, were also submitted into evidence.

In its post-hearing brief the Staff discussed all the issues and concluded that claims 3, 4, and 5 of the '295 patent were valid, that the claims were infringed by the imported products, and that the evidence supported a finding of tendency to injure in terms of section 337. Lannom, of course, espoused the same conclusion. There was no proponent of a contrary result.

The ALJ, in his initial determination ("ID") on February 19, 1985, held all of the claims of the patent (not only claims 3, 4, and 5) invalid for failure to comply with 35 U.S.C. §§ 103 and 112; and in the alternative, if valid then infringed by some but not all of the imported polyurethane core softballs. The ALJ also held that there was

neither substantial injury nor a tendency to substantially injure the domestic industry.

Lannom filed a petition for review of the ID by the full Commission. The Staff supported Lannom's position on the merits of the issues of validity, infringement, default, and tendency to injure, although the Staff did not agree with Lannom on the question of whether validity was properly at issue.

On April 16, 1985 the Commission affirmed the ALJ's determinations of patent invalidity under sections 103 and portions of section 112, and of absence of either the effect or tendency to substantially injure the domestic industry. The Commission took no position on the issues of invalidity under section 112 based on "best mode", or infringement, and stated:

> By taking no position on those two issues, the Commission neither affirms nor reverses the ALJ as to them. Accordingly, the ID (except for the issues of best mode and infringement) has become the determination of the Commission pursuant to 19 C.F.R. § 210.53(h).

On this appeal from the Commission's final determination, none of the respondents named before the Commission has filed an appearance or participated in any way. The Commission itself is the only "respondent" before us.

## I.

Lannom asserts that the Commission erred in law in its decision of invalidity of the '295 patent, and appeals from that decision on its merits. Lannom also challenges the authority of the Commission to have determined the validity of the '295 patent, in view of the statutory presumption of validity, 35 U.S.C. § 282:

> A patent shall be presumed valid. Each claim of a patent ... shall be presumed valid independently of the validity

---

1. 19 C.F.R. § 210.4(b) calls the Staff a "party", whose role is defined in section 210.4(c) "to engage in investigatory activities with respect to the proceeding". As the Commission described it, "the [investigative attorney] has no 'client' although he represents the Commission. He does so only as an impartial investigator with no affirmative case to present." *In re Certain Card Data Imprinters and Components Thereof,* Inv. No. 337–TA–104, Commission Memorandum Opinion at 9 (Nov. 18, 1981).

of other claims.... The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded:

\* \* \* \* \* \*

(2) Invalidity of the patent or any claim in suit....

Lannom relies on the fact that none of the remaining respondents had raised the defense of invalidity, as they could have under 19 U.S.C. § 1337(c), and asserts that in the absence of such defense the presumption of 35 U.S.C. § 282 controls, and validity is not at issue.

### A.

Diamond Sports had initially pled the defense of invalidity, but entered into a settlement agreement with Lannom and withdrew before the hearing. Lannom refers to the requirement of section 282 that the defense of invalidity "shall be pleaded". It is not disputed that after Diamond was withdrawn the defense of invalidity was not raised.

Lannom also asserts that it was denied the procedural benefits of section 282 because the ALJ treated validity as if the burden were on Lannom to come forward and to present a *prima facie* case that the patent was valid, rather than determining whether a challenger had met its burden of proving invalidity by clear and convincing evidence. Although the ALJ quoted from *SSIH Equipment S.A. v. U.S. International Trade Commission*, 718 F.2d 365, 375, 218 USPQ 678, 687 (Fed.Cir.1983), that "the presumption places the burden of going forward, as well as the burden of persuasion, upon the party asserting invalidity", the ALJ did not explain how this applied when no party disputed the validity of the patent.

Throughout the proceedings the Staff did not assert that the patent was invalid. Prior to the hearing the Staff expressly took no position on validity although it raised the possibility of an adverse position. Nonetheless after the hearing as well as after the issuance of the ALJ's ID the Staff position was consistently that the patent was valid.

The Commission asserts that it can and must determine patent validity, even if validity is not challenged by a party or by its own Staff, and that 35 U.S.C. § 282 does not prevent this determination on a full evidentiary record: "The presumption places no limitation on the introduction of evidence of validity or on who may introduce that evidence." The Commission gives as its reason that section 337 is a trade statute, not "merely" a patent statute, and that the public interest requires that the Commission investigate the validity of every patent brought before it for enforcement. The Commission refers to the Report of the Senate Committee on Finance:

> [B]efore ordering exclusion or issuing a cease and desist order, the Commission would be required to consider the effect of such action upon the public health and welfare, competitive conditions in the U.S. economy, the production of like or directly competitive articles in the United States, and U.S. consumers. The Committee feels that the public interest must be paramount in the administration of this statute.

S.Rep.No. 1298, 93d Cong., 2d Sess. 193, *reprinted in* 1974 U.S.Code Cong. & Ad. News 7186, 7326 [hereinafter "Senate Report"]. This public interest, however, has nothing to do with the presumption of validity accompanying the grant of a patent by the U.S. Patent and Trademark Office. Section 282 is based on the presumption of administrative correctness, a presumption derived from both public policy and pragmatic efficiency. This presumption assigns the burden of proof to the challenger, and thus necessarily requires that there be a challenger. The Commission's concern for public health and welfare and a competitive economy is not inimical to the public policy that undergirds 35 U.S.C. § 282.

The Commission position is that the complainant in a section 337 action must present a *prima facie* case of all issues,

including patent validity, despite both the section 282 presumption and the absence of any challenge to validity. The Commission, in its discussion of its authority to determine validity despite such lack of challenge, asserts that in accordance with established practice and law a complainant is required to prove all the statutory elements of a section 337 case by "substantial, reliable, and probative evidence sufficient to establish a *prima facie* case of violation by respondents", *quoting In re Certain Window Shades and Components Thereof,* Inv. No. 337–TA–83, 216 USPQ 526, 528 (USITC 1981). The above quotation from *Window Shades,* when read in context, makes explicit that the quoted clause refers to infringement, not validity:

> Therefore, in order to evaluate whether the imported window shades infringe the patent, we must determine whether there is in the record substantial, reliable, and probative evidence which would be sufficient to support a finding of infringement; that is, we must look to see whether the complainant has established a *prima facie* case.

The Commission's decision in *Window Shades* is squarely contrary to that for which it was cited, and entirely in support of Lannom's position:

> By law, a patent duly issued by the U.S. Patent and Trademark Office is presumed to be valid. 35 U.S.C. 282. The ALJ found the patent to be valid, since no party had contested its validity. Since no evidence has been brought forth to rebut the presumption of validity, we concur with the ALJ's recommendation, and find the patent to be valid.

*Id.* at 528.

The Commission also refers to *In re Certain Food Slicers and Components Thereof,* Inv. No. 337–TA–76, 219 USPQ 176, 179 (USITC 1981), in which it held that even if there is no active respondent it is insufficient for the complainant merely to allege the components of the violation, "except where critical information cannot be obtained after a reasonable effort." In that case, as in *Window Shades,* the Commission was referring to evidence of infringement.

In response to the Commission's assertion that its obligations in administration of section 337 require it to review whether an unchallenged patent was correctly granted, Lannom states that this interpretation is unsupported by 19 U.S.C. § 1337, its legislative history, or judicial precedent. We look first at the statutory intent.

### B.

Prior to 1974 the Commission was barred, by judicial decision starting at least as early as 1930, from reviewing the validity of patents brought before it under section 337. The Trade Act of 1974 removed this bar, and expressly authorized the Commission to consider "all legal and equitable defenses" that theretofore could have been raised only in the courts. 19 U.S.C. § 1337(c). The position now espoused by the Commission requires the conclusion that Congress intended, by the 1974 amendments, to grant the Commission a greater authority to review patent validity than that which is available to the district courts. To test that conclusion against the statute from which this authority purportedly derives, we have reviewed the origins of the Act.

The substance of section 337 originated in the Tariff Act of 1922, ch. 356, Title III, § 316, 42 Stat. 943 (1922). Section 316, predecessor to section 337, provided:

> (a) That unfair methods of competition and unfair acts in the importation of articles into the United States, or in their sale ... the effect or tendency of which is to destroy or substantially injure an industry, efficiently and economically operated, in the United States, or to prevent the establishment of such an industry, or to restrain or monopolize trade and commerce in the United States, are hereby declared unlawful....

This restriction on unfair trade practices derived from the Revenue Act of 1916, ch. 463, Title VII, § 704, 39 Stat. 796 (1916), which authorized the Tariff Commission to investigate "conditions, causes, and effects relating to competition of foreign industries with those of the United States".

Practices the Commission described as unfair included deceptive use of trademarks, deceptive imitation of goods, false labeling, and infringement of patents. *See* United States Tariff Commission, *Dumping and Unfair Competition in the United States* (1919). In the Twelfth Annual Report of the United States Tariff Commission 21 (1928), the Commission stated:

> Existing law, apart from section 316, is wholly inadequate to protect domestic owners of patents from violation of their patent rights through the importation and sale of infringing articles.

In the Commission's view:

> Stoppage of importation of infringing articles through an order of exclusion from entry is the only effectual remedy.

*Id.* It was early established that this remedy did not require or permit redetermination of patent validity. In *Frischer & Co. v. Bakelite Corp.*, 17 CCPA 494, 509, 39 F.2d 247, 258, *cert. denied*, 282 U.S. 852, 51 S.Ct. 29, 75 L.Ed. 755 (1930), the Court of Customs and Patent Appeals stated that the Commission was

> merely an administrative fact-finding body. It has no judicial powers. The right to pass upon the validity of a patent which has been issued by the Patent Office is a right possessed only by the courts of the United States given jurisdiction thereof by law.

Section 316 was reenacted as section 337 of the Tariff Act of 1930, ch. 497, Title III, § 337, 46 Stat. 703 (1930). Although other amendments to the statute were made at that time, the Commission was not granted the authority to review patent validity.

So it remained for forty-four years. In *In re Von Clemm*, 229 F.2d 441, 444, 108 USPQ 371, 373 (CCPA 1955), the CCPA reiterated that

> the validity of the patent or patents involved may not be questioned by the Tariff Commission nor by this court on appeal therefrom, but that a regularly issued patent must be considered valid unless and until a court of competent jurisdiction has held otherwise.

In 1974, in response to "the need to find cooperative solutions to common domestic and international economic problems" Congress enacted the Trade Act of 1974, Pub. L.No. 93–618, 88 Stat. 1978 (1975). Senate Report at 5, 1974 U.S.Code Cong. & Ad. News at 7187. The Tariff Commission was renamed the United States International Trade Commission. 19 U.S.C. § 2231. Remedies for violation of section 337 were strengthened, and the Commission was authorized to consider invalidity and other defenses:

> § 1337(c) ... The Commission shall determine ... whether or not there is a violation of this section. All legal and equitable defenses may be presented in all cases....

The reasons for this change were discussed in the Senate Report at 196, 1974 U.S.Code Cong. & Ad.News at 7329:

> [T]he public policy recently enunciated by the Supreme Court in the field of patent law (cf., *Lear, Inc. v. Atkins* [sic], 395 U.S. 653 [89 S.Ct. 1902, 23 L.Ed.2d 610] (1969) and the ultimate issue of the fairness of competition raised by section 337, necessitate that the Commission *review the validity and enforceability of patents, for the purposes of section 337, in accordance with contemporary legal standards when such issues are raised* and are adequately supported. The Committee believes the Commission may (and should when presented) under existing law review the validity and enforceability of patents, but Commission precedent and certain court decisions have led to the need for the language of amended section 337(c). The Commission is not, of course, empowered under existing law to set aside a patent as being invalid or to render it unenforceable, and the extent of the Commission's authority under this bill is *to take into consideration such defenses* and to make findings thereon for the purposes of determining whether section 337 is being violated. [emphasis added]

In authorizing the Commission to consider such defenses, Congress cautioned that:

> The Commission's findings neither purport to be, nor can they be, regarded as

binding interpretations of the U.S. patent laws in particular factual contexts. Therefore, it seems clear that any disposition of a Commission action by a Federal Court should not have a res judicata or collateral estoppel effect in cases before such courts.

*Id.*

Although this legislation was the subject of extensive hearings, the proposed grant of authority to the Commission to consider defenses of patent invalidity and unenforceability for section 337 purposes did not occasion extensive controversy. A supporter stated "we do not believe that the statute's discrimination against the importer will be removed until the law requires the Tariff Commission to consider and rule upon the same legal defenses that are available to defendants in patent infringement suits in federal courts". *Hearings on H.R. 10710 before the Senate Committee on Finance*, 93d Cong., 2d Sess.1941 (1974) (statement of Noel Hemmendinger). There was no significant opposition. William D. Eberle, Special Representative for Trade Negotiations, testified that "changes in responses to unfair trade practices involving patent infringement provide for fairer procedures, a greater role by the Tariff Commission, and judicial review." *Id.* at 219.

Subsequent decisions implement this congressional intent that the Commission entertain the same legal defenses to charges of infringement as do the courts. In *In re Chain Door Locks*, Inv. No. 337–TA–5, 191 USPQ 272, 280 (USITC 1976), the Commission considered the defenses of patent invalidity raised by the respondents and the Staff and held, referring to the presumption of validity of 35 U.S.C. § 282, "that [respondent] and the investigative staff have failed to overcome this presumption". In *Solder Removal Co. v. U.S. International Trade Commission*, 582 F.2d 628, 633, 199 USPQ 129, 133 (CCPA 1978), our predecessor court stated that the presumption of validity requires that "the burden of persuasion is and remains always upon the party asserting invalidity, whether the most pertinent prior art was or was not considered by the examiner." In *Astra-*

*Sjuco, A.B. v. U.S. International Trade Commission*, 629 F.2d 682, 688–90, 207 USPQ 1, 6–8 (CCPA 1980), the court held that the evidence before the Commission was insufficient under the clear and convincing standard to overcome the presumption of validity, the defense of invalidity having been asserted by respondents. *See also Aktiebolaget Karlstads Mekaniska Werkstad v. U.S. International Trade Commission*, 705 F.2d 1565, 217 USPQ 865 (Fed.Cir.1983); *Stevenson v. U.S. International Trade Commission*, 612 F.2d 546, 204 USPQ 276 (CCPA 1979). In all of these cases the respondent asserted invalidity, and the Commission consistently afforded the patent the presumption of validity, subject to rebuttal by clear and convincing evidence.

In *In re Certain Trolley Wheel Assemblies*, Inv. No. 337–TA–161, USITC Pub. No. 1605 (November 1984), the validity of the patent was not challenged by any party and the patent was presumed valid. Similarly in *In re Certain Miniature Plug-In Blade Fuses*, Inv. No. 337–TA–114, 221 USPQ 792, 798 (USITC 1983), the "complainant chose to rely on the statutory presumption that patents are valid" and "did not proffer evidence concerning the validity of the patents in issue" (procedures for which the Commission criticizes Lannom); the Commission held the patents valid in the absence of rebuttal evidence and noted that the Staff "apparently did not find reason to challenge the validity". *See also In re Certain Molded-In Sandwich Panel Inserts*, Inv. No. 337–TA–99, 218 USPQ 832, 836 (USITC 1982), *aff'd sub nom. The Young Engineers, Inc. v. U.S. International Trade Commission*, 721 F.2d 1305, 219 USPQ 1142 (Fed.Cir.1983). In *In re Certain Caulking Guns*, Inv. No. 337–TA–139, 223 USPQ 388 (USITC 1984), where only the Staff asserted invalidity, the presumption of validity was nonetheless held to be unrebutted by clear and convincing evidence.

In actions before the Commission as in the courts, the presumption of validity is not lost. As this court has often said, a patent is "born valid" when it is granted by

the Patent and Trademark Office. *Data-scope Corp. v. SMEC, Inc.*, 776 F.2d 320, 323, 227 USPQ 838, 840 (Fed.Cir.1985); *Roper Corp. v. Litton Systems, Inc.*, 757 F.2d 1266, 1270, 225 USPQ 345, 347 (Fed. Cir.1985). It is presumptively valid, and its validity need not be re-established if validity is not raised as a defense in a section 337 action.

### C.

It is beyond cavil that a district court does not have authority to invalidate a patent at its own initiative if validity is not challenged by a party. The Commission argues that it has a public responsibility to verify the validity of any patent brought before it under section 337.

In support of its position that the Commission has authority *sua sponte* to determine validity, the Commission cites *Udall v. Federal Power Commission*, 387 U.S. 428, 87 S.Ct. 1712, 18 L.Ed.2d 869 (1967), and *Scenic Hudson Preservation Conference v. Federal Power Commission*, 354 F.2d 608 (2d Cir.1965), *cert. denied sub nom. Consolidated Edison Co. of New York, Inc. v. Scenic Hudson Preservation Conference*, 384 U.S. 941, 86 S.Ct. 1462, 10 L.Ed.2d 540 (1966). In these cases the courts required the Federal Power Commission to develop the facts concerning, and give full consideration to, such issues as the environmental and developmental impact of the proposed power generators, because the Federal Power Act requires such inquiry incident to the grant of federal licenses. By analogy, the Commission argues, the Trade Act requires the Commission to review patent validity. The analogy is strained. There is no statutory presumption before the Federal Power Commission, and while the Federal Power Act assigned this specific duty of inquiry to the regulatory agency, the Trade Act is explicit in referring to "defenses". Other cases cited by the Commission also relate to the need for the regulatory agency to develop a complete record in order to fulfill its regulatory assignment, *see, e.g., Confederated Tribes and Bands of the Yakima Indian Nation v. Federal Energy Regulatory Commission*, 746 F.2d 466 (9th Cir.1984), holding that the FERC was required by the Federal Power Act to examine fishery issues and issue an environmental impact statement before issuing a license. The situations, the controlling statutes, and the public policies, are not comparable.

■ Patent invalidity is a statutory defense, not a regulatory duty. In *Young Engineers*, 721 F.2d at 1315, 219 USPQ at 1152, this court observed that "any determination of unfair acts is dependent upon the private rights between parties in the position of complainant and respondent", and that the 1974 amendment of section 337 permitting the presentation of all legal and equitable defenses reflected recognition by Congress that "essentially private rights are being enforced in the proceeding".

The Commission argues that "great mischief" can result if an "unworthy" patent could avoid scrutiny when, as here, the only respondent (Diamond Sports) who challenged patent validity was removed from the action by settlement. The Commission does not explain why a patent duly examined by the Patent and Trademark Office must be presumed "unworthy" to the point that, if not challenged, the examination must nevertheless be repeated by the International Trade Commission. Spontaneous administrative duplication of the work of one agency by another, to avoid "mischief" if the first agency erred, shall not be inferred or implied.

As stated in *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842 (1984), in connection with an agency's construction of the statute it administers, "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." The Court admonished that "The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Id.* at 843 n. 9 and cases cited therein.

The Court in *Chevron* observed that if a "statute is silent or ambiguous with respect to the specific issue, the question for

the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843 (citing *Morton v. Ruiz,* 415 U.S. 199, 231, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974)). Discussing the "principle of deference to administrative interpretations", *id.* at 844, the Court emphasized that such deference does not authorize contravening the intent of Congress. *Id.* at 844–45. Nor, of course, does it authorize an administrative agency to exceed the authority Congress granted it. *See, e.g., Cowan v. United States,* 710 F.2d 803, 805 (Fed.Cir.1983). In the full sweep of legislative amendment, debate, and commentary related to section 337, we have found no suggestion that Congress intended to grant the Commission the initiative it now asserts.

The purpose of section 337 from its inception was to provide relief to United States industry from unfair acts, including infringement of United States patents by goods manufactured abroad. The statute authorizes the Commission to consider "all legal and equitable defenses", including that of patent invalidity, when, as the legislative history states, such issues are raised. The ultimate question is "one of congressional intent, not one of whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law". *Touche Ross & Co. v. Redington,* 442 U.S. 560, 578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1979). The Supreme Court has frequently observed that when Congress intends to grant a right of action, it does so clearly and unambiguously. In *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 15, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981), dealing with an asserted private right of action, the Court stated "[i]n the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate."

■ We conclude, therefore, that Congress did not authorize the Commission to redetermine patent validity when no defense of invalidity has been raised. The Commission's holding that the '295 patent is invalid is vacated.

## II.

The ALJ determined that the claims, if valid, were infringed by some of the imported softballs, and the ID contains extensive findings pertinent to the issue. The Commission refused either to adopt or reject the ALJ's determinations on infringement, while adopting his injury determination. Thus the issue of infringement is not before this court, no final determination thereof having been made.

Although infringement and injury are separate components of a section 337 determination, in this case it would not be possible to review the injury determination in isolation. The Commission argues that it did not have to decide infringement "because tendency to injure is not dependent on infringement" but is a "separate statutory criterion requiring independent proof". In *Textron, Inc. v. U.S. International Trade Commission,* 753 F.2d 1019, 224 USPQ 625 (Fed.Cir.1985), cited by the Commission, the Commission first determined the asserted unfair acts of false advertising and trademark infringement, and then determined whether the unfair acts that they found caused injury. Section 337 indeed requires independent proof of injury, but it is the injury caused by the infringing acts that must be determined.

■ We agree that there may be circumstances wherein no injury will be shown even if all doubt as to infringement is resolved in favor of the complainant. The case at bar is not so simple, however, because the ALJ did not direct his analysis of injury to that caused by infringing goods to the corresponding domestic industry. Thus the determination of which goods are covered by the patent claims is essential to the ensuing determination of injury, and we cannot review the latter without first reviewing the former.

Lannom argues that the Commission by implication adopted the ALJ's findings on infringement because it affirmed the ALJ's decision on tendency to injure, and therefore that the infringement issue is properly before us for appellate review. But in this

case the Commission was not silent: the Commission expressly stated that it "neither affirms nor reverses the ALJ as to [infringement]". In view of this statement we can not assume, or infer, that the findings on infringement were affirmed by the Commission. These findings can not receive appellate review absent determination thereof by the Commission.

Section 337 investigations focus on injury to the domestic industry by infringing imports. *See, e.g., In re Certain Molded-in Sandwich Panel Inserts,* 218 USPQ at 836–37; *In re Certain Caulking Guns,* 223 USPQ at 428. In the case at bar the ALJ made a complex series of findings concerning infringement, to the effect that some of the Diamond imports having a certain coefficient of rebound, and certain cores produced by the Taiwan company Mansui Chemplas, were outside the scope of the patent claims as the ALJ interpreted them. Lannom assigned error to these findings in its petition to the Commission, as did the Staff. If these findings are indeed in error, the injury determination would be based on different figures than if these findings are correct. By declining either to accept or reject the ALJ's findings on infringement, the Commission had an inadequate basis on which to review the ALJ's findings on injury.

The Commission decision that expressly "neither affirms nor reverses the ALJ" on infringement thus inhibited expeditious resolution of the matters before it, as required by 19 U.S.C. § 1337(b)(1). In *Beloit Corp. v. Valmet OY,* 742 F.2d 1421, 1422–23, 223 USPQ 193, 194 (Fed.Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2706, 86 L.Ed.2d 721 (1985), this court commented that section 210.53(h) is "ambiguous" as to whether it authorized the Commission to refuse to take a position on an issue decided by the ALJ. In *Beloit,* however, that refusal had no adverse consequences; the Commission did take a position on the asserted unfair act, its holding of noninfringement was reviewed on appeal, and its affirmance was dispositive of the section 337 question.

In Lannom's case the Commission neither decided if unfair acts existed, nor brought the matter to sufficient finality to enable appellate review of this threshold question. Therefore we vacate the decision of absence of tendency to injure, and remand to the Commission for determination of infringement and redetermination of injury based on articles that are found to infringe the patent.

VACATED AND REMANDED.