BALDWIN, Senior Circuit Judge.
 

 Appeal by Beneficial Corporation and Subsidiaries (Beneficial) from a judgment of the United States Claims Court 9 Cl.Ct. 119, (Claims Court) in a tax refund case under § 166(c) of the Internal Revenue Code of 1954 (IRC). Though that section was repealed by § 805(a) of the Tax Reform Act of 1986, Pub.L. No. 99-514, 100 Stat. 2085, the repeal was effective as of December 31, 1986 and, hence, is inapplicable to the facts of this case.
 
 [1]
 
 The Claims Court granted summary judgment for the government and denied partial summary judgment for Beneficial. We reverse the judgment and remand for further proceedings consistent herewith.
 

 Background
 

 Beneficial is an accrual basis taxpayer in the consumer finance business and keeps its books on a calendar year basis. In the course of its business, Beneficial makes long term loans that are not always paid back. Section 166(c) of the IRC allowed a deduction for such losses:
 

 § 166. Bad debts
 

 (a) General rule
 

 (1) Wholly worthless debts
 

 There shall be allowed as a deduction any debt which becomes worthless within the taxable year.
 

 (2) Partially worthless debts
 

 When satisfied that a debt is recoverable only in part, the Secretary may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.
 

 * * * # * *
 

 (c) Reserve for bad debts
 

 In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary) a deduction for a reasonable addition to a reserve for bad debts.
 

 Section 166(a) prescribed a specific charge-off method for bad debts that actually became worthless, and were charged off on the taxpayer’s books, in the taxable year. Under that section, the amount of deduction reflected the actual charge-off experience during the taxable year.
 

 In lieu of a deduction for specific bad debts incurred during the taxable year, § 166(c) allowed an accrual basis taxpayer to establish a reserve for bad debts and to deduct reasonable additions thereto. The reserve approximated loan amounts presently outstanding but expected to be uncol-lectable in the future. Each year, the proper amount of reserve was redetermined, and a reasonable addition to the reserve balance necessary to bring it up to the proper level was deductible, subject to the Secretary’s discretion.
 
 [2]
 

 Beneficial utilized the reserve method of § 166(c). On audit of Beneficial’s tax returns for 1976 and 1977, the Internal Revenue Service (“IRS”) found that Beneficial’s reserve level reflected an amount exceeding those bad debts reasonably expected to be written off in the next succeeding year.
 
 *1572
 
 As a result, the IRS disallowed Beneficial’s additions to its bad debt reserve. Instead, it applied the
 
 “Black Motor
 
 formula,” which is based on the methodology used in
 
 Black Motor Co. v. Commissioner,
 
 41 B.T.A. 300 (1940),
 
 aff'd on other grounds,
 
 125 F.2d 977 (6th Cir.1942).
 
 [3]
 

 The Commissioner’s application of the
 
 Black Motor
 
 formula resulted in Beneficial having deficient tax obligations of $16,037,-089 and $4,641,296 for 1976 and 1977, respectively. The difference stems basically from Beneficial including in its reserve all outstanding debts presently expected to become worthless in the next and succeeding years. In contrast,
 
 Black Motor
 
 focuses on outstanding debts expected to become worthless in the next succeeding year only. Beneficial paid the resulting deficiencies and filed timely claims for refund pursuant to § 6511 of the IRC. After its claims for refund were disallowed by the IRS, Beneficial filed this action for refund in the Claims Court.
 

 The Claims Court, in granting the government’s summary judgment motion and denying Beneficial’s partial summary judgment motion, weighed heavily the discretion expressly granted the Commissioner in § 166(c). Stating that Beneficial has a “heavy burden” of proof, the Claims Court held that the Commissioner did not abuse his discretion in using the
 
 Black Motor
 
 formula to calculate reasonable addition to bad debt reserve. That formula, reasoned the Claims Court, has been in existence for many years and approved in numerous cases.
 

 Beneficial argues that, where the outstanding receivables have an average maturity substantially in excess of one year, the current reserve should be large enough to cover those receivables expected to be charged off in later years as well as those receivables expected to be written off in the next succeeding year. Beneficial maintains that the Commissioner’s discretion in § 166(c) pertained to choosing those who should be eligible for that section or approving the accuracy of figures used, but that it did not allow the Commissioner to change the concept of “reserve for bad debts” so that it would reflect projected losses only in the next year. Beneficial urges that a bad debt reserve by its nature accounts for an “impairment to capital,” and if it is reasonably certain that some portion of the outstanding loans will never be recovered—whether in the next or succeeding years—that amount of taxpayer’s capital has been presently impaired because it is for all practical purposes forever lost.
 
 [4]
 

 The government does not challenge the accuracy of Beneficial’s projected losses beyond the next year. Instead, it contends that the statute expressly gave the Commissioner discretion to allow a deduction for a reasonable addition to a bad debt reserve and that the Commissioner did not abuse that discretion in focusing only on next year’s losses.
 

 Issue
 

 Whether the Commissioner’s discretion under § 166(c) allowed him, when assessing “reasonable addition to a reserve for bad debts,” to focus only on that portion of outstanding debts expected to become worthless in the next taxable year.
 

 OPINION
 

 Normally, the Commissioner had great discretion under § 166(c) in determining a “reasonable” addition to a reserve for bad debts. The Commissioner’s determination of a reasonable addition had to be sustained unless the taxpayer proved that the Commissioner abused that discretion.
 
 *1573
 

 Thor Power Tool Co. v. Commissioner,
 
 439 U.S. 522, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979);
 
 Paramount Finance Co. v. United States,
 
 157 Ct.Cl. 824, 304 F.2d 460 (1962). As stated by the Claims Court in this case:
 

 It is clear from the language of the statute that a taxpayer has an absolute right to choose to deduct his worthless debts when they are ascertained to be worthless [Section 166(a)], but if, instead, he chooses to deduct additions to a reserve, he subjects himself to a reasonable and discretionary review of the additions to the reserve [Section 166(c) ].
 

 We agree with the Claims Court that deductions based on reserves are rarely permitted under the IRC and that, when Congress makes an exception to that rule but explicitly conditions the exception upon the Commissioner’s discretion, the condition
 
 (i.e.,
 
 the Commissioner’s discretion) “is as important as the permission.”
 
 Krim-Ko Corp. v. Commissioner,
 
 16 T.C. 31, 37 (1951). However, undue expansion of that condition beyond its legitimate scope would improperly circumvent congressional intent.
 

 Congressional Intent
 

 Section 166 itself did not define “reserve for bad debts.”
 

 Beneficial introduced expert testimony supporting an established, commonly accepted definition of that phrase in the accounting world in 1921, the time of enactment of § 166(c). That definition is inconsistent with the “next-year only” focus of the government. The government’s focus, Beneficial argues, is inconsistent with the concept of a reserve, which is to reduce the amount of accounts or lower receivables to what will ultimately be collected. Indeed, Beneficial argues, not only is the 1921 accounting concept still with us today but the government’s focus on “next-year only” is unknown in accounting theory and practice.
 

 The government does not dispute that there was a well established, commonly accepted meaning of “reserve for bad debts” in the accounting field at the time of enactment of § 166(c). Indeed, the government does not even contend that a competing meaning of “reserve for bad debts” existed at that time. Instead, the government argues that the meaning of “reserve,” as established for purposes of business accounting, is inconsistent with the notion of annual accounting in tax law, that Congress did not intend to adopt the accountant’s meaning of “reserve for bad debts,” and that the Commissioner’s discretion expressly conferred by statute, as well as a demonstrated legislative concern for the fisc, overrides that meaning.
 

 We take as uncontested this fact: at the time of enactment of § 166(c), the only acceptable meaning of “reserve for bad debts” was the accounting concept urged by Beneficial. The Claims Court opinion does not reveal a genuine dispute on that fact; nor does the government contest it on appeal. Indeed, both parties filed summary judgment motions below, each urging no genuine disputes on material facts, and the government’s summary judgment motion was granted by the Claims Court.
 
 [5]
 

 Given the accounting concept of “reserve for bad debts” as the only approach in 1921, we find compelling Beneficial’s argument that Congress intended to incorporate that concept into the statute. Though the government persuasively argues that accounting concepts do not always apply to income tax purposes, we conclude that in the present instance Congress intended to apply the accounting concept to the statute. It would be unreasonable to presume that Congress had adopted a statutory term, whose sole meaning was well established in the field, in a manner contrary to that established meaning without an explicit indication to that effect. Though § 166 gives the Commissioner discretion, that discretion was not to change the concept but to work with it,
 
 e.g.,
 
 in determining which entities should be allowed to use it and in approving the various figures used.
 

 
 *1574
 
 We are not unmindful that, in matters of statutory interpretation, the construction adopted by an agency charged with the duty to administer that statute, here the IRS, is usually given deference.
 
 See, e.g., Young v. Community Nutrition Institute,
 
 476 U.S. 974, 106 S.Ct. 2360, 2364-65, 90 L.Ed.2d 959 (1986) (considerable deference);
 
 Chevron U.S.A. v. Natural Resources Defense Council,
 
 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (“deference”);
 
 Udall v. Tallman,
 
 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1964) (“great deference”);
 
 Minnesota Power and Light Co. v. United States,
 
 782 F.2d 167, 170 (Fed.Cir.1986) (“deference”);
 
 Consumer Prod. Div., SCM Corp. v. Silver Reed America, Inc.,
 
 753 F.2d 1033, 1039 (Fed.Cir.1985) (“considerable deference”).
 
 Cf. Thomas International Ltd. v. United States,
 
 773 F.2d 300, 303 (Fed.Cir.1985), ce
 
 rt. denied,
 
 — U.S.-, 106 S.Ct. 1261, 89 L.Ed.2d 571 (1986) (“We must defer to Treasury regulations that ‘implement the Congressional mandate in some reasonable manner.’ ”).
 

 Giving deference, however, does not entirely dispense with meaningful review.
 
 See, e.g., CBS, Inc. v. FCC,
 
 453 U.S. 367, 382, 101 S.Ct. 2813, 2823, 69 L.Ed.2d 706 (1981);
 
 Southern Community College v. Davis,
 
 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979);
 
 Teamsters v. Daniel,
 
 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979);
 
 NLRB v. Bell Aerospace Co.,
 
 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974);
 
 Red Lion Broadcasting Co. v. FCC,
 
 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969);
 
 Lannom Manufacturing Co. v. ITC,
 
 799 F.2d 1572, 1579, 231 USPQ 32, 38 (Fed.Cir.1986);
 
 Al Tech Specialty Steel Corp. v. U.S.,
 
 745 F.2d 632, 642 (Fed.Cir.1984). As stated in
 
 American Lamb Co. v. United States,
 
 785 F.2d 994, 1001 (Fed.Cir.1986), if the agency interpretation “contravenes clearly discernible legislative intent” or is otherwise unreasonable, it should not stand. For the reasons stated above, and below, the agency interpretation in this case perverts the intent of Congress and is unreasonable.
 

 Case Law
 

 As support for its “next-year only” focus, the government has cited, and the Claims Court relied on, case law upholding the Commissioner’s application of the
 
 Black Motor
 
 formula to calculate a reasonable addition to a taxpayer’s bad debt reserve under § 166(c).
 
 See, e.g., Thor Power Tool Co. v. Commissioner,
 
 439 U.S. 522, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979);
 
 S.W. Coe & Co. v. Dallman,
 
 216 F.2d 566 (7th Cir.1954);
 
 Atlantic Discount Co. v. United States,
 
 473 F.2d 412 (5th Cir.1973);
 
 Roth Steel Tube Co. v. Commissioner,
 
 620 F.2d 1176 (6th Cir.1980);
 
 Paramount Finance Co. v. United States,
 
 157 Ct.Cl. 824, 304 F.2d 460 (1962);
 
 Ehlen v. United States,
 
 163 Ct.Cl. 35, 323 F.2d 535 (1963);
 
 James A. Messer Co. v. Commissioner,
 
 57 T.C. 848 (1972);
 
 Valmont Industries, Inc. v. Commissioner,
 
 73 T.C. 1059 (1980);
 
 Time Acceptance, Inc. v. Commissioner,
 
 49 T.C.M. (CCH) 1186 (1985),
 
 aff'd.,
 
 787 F.2d 587 (5th Cir.1986) (per curiam).
 

 None of those cases, however, involved a taxpayer having accurate estimates on existing debts of loan losses beyond the next succeeding year, and hence, in none of those cases was the court asked to decide whether the Commissioner must consider such accurate figures in calculating the allowable deduction under § 166(c). Consequently, those cases do not represent a rejection of Beneficial’s position in this case,
 
 i.e.,
 
 using future losses beyond next year when they are accurately presented.
 

 The government relies on
 
 Investors Discount Corp. v. Commissioner,
 
 48 T.C. 767 (1967), in which the Tax Court stated:
 

 The essential question to be determined in establishing an addition to a bad debt reserve is whether, looking at the factual situation as it exists at the end of the taxable year, the reserve is sufficient to absorb the bad debts that are anticipated during the subsequent taxable year. The fact that feared contingencies may arise in a later period, although possibly justifying an accumulation of surplus from the viewpoint of sound business management, does not justify the type of reserve contemplated by section 166. In
 
 *1575
 
 deed, the manner in which the amount of the deduction is calculated reveals that the anticipated losses for the following year is the focal point of inquiry. The amount in the reserve is reexamined annually in order to determine the amount of the addition required. (Citations omitted.)
 

 Id.
 
 at 771.
 

 Though that language supports the “next-year only” focus of the government, the suspected future losses in
 
 Investors Discount Corp.
 
 appear to have been more speculative than the future loss figures presented by Beneficial here. In any event, the Sixth Circuit in
 
 Thompson v. Commissioner,
 
 761 F.2d 259 (6th Cir.1985), expressly rejected the view articulated in
 
 Investors Discount Corp.
 
 We fully adopt the Sixth Circuit’s view.
 

 The petitioner in
 
 Thompson
 
 desired to deduct under the reserve method of § 166(c) an amount representing a reasonable estimate of potential worthlessness of its outstanding loans, apparently without regard to whether such worthlessness will be realized in the next succeeding year. The Commissioner, on the other hand, insisted on application of the
 
 Black Motor
 
 formula to calculate the amount of deduction. Citing
 
 Investors Discount Corp.,
 
 the Commissioner argued that “ ‘[t]he essential question to be determined in establishing an addition to a bad debt reserve is whether, looking at the factual situation as it exists at the end of the taxable year, the reserve is sufficient to absorb the bad debts that are anticipated during the subsequent taxable year.’ ”
 
 Id.
 
 The court, however, rejected that argument
 

 We decline to follow the dictum in
 
 Investors Discount.
 
 There is no indication in the statute that bad debts can be reserved only one year in advance. To the contrary, the whole theory of the provision is that bad debts may be deducted when a loan is made or a receivable is taken into income, notwithstanding the fact that the character of the individual debts may not become evident for many years. The year end reserve therefore is calculated as the amount that can be expected to cover losses properly anticipated, whenever occurring, on all the debts outstanding at the end of the tax year.
 
 See Thor Power Tool Co. v. Commissioner,
 
 439 U.S. 522, 546, 99 S.Ct. 773, 788, 58 L.Ed.2d 785 (1979). No other case has followed
 
 Investors Discount,
 
 and its authority for the proposition instead refers to subsequent years.
 
 Krim-Ko Corp. v. Commissioner,
 
 16 T.C. 31, 37 (1951).
 

 761 F.2d at 268-69.
 

 The Claims Court refused to adopt
 
 Thompson
 
 as a “guiding light for this case.” It distinguished
 
 Thompson
 
 as a case where, under the particular facts present, the taxpayer was able to rebut the “presumptive reasonableness” of the
 
 Black Motor
 
 formula. In
 
 Thompson,
 
 stated the Claims Court, the taxpayer’s year-end receivables fluctuated drastically. Its yearly sales were dropping but its accounts receivable were rising. Hence, stated the Claims Court, “the taxpayer’s average loss experienced from accounts receivable failed to adequately reflect actual losses.” Here, however, states the Claims Court, “plaintiff had no unusual loss experience with which to rebut the application of the
 
 Black Motor
 
 formula.”
 

 We disagree with the Claims Court. We do not believe that
 
 Thompson
 
 can be distinguished on its facts. The language quoted above from
 
 Thompson
 
 broadly condemns the rationale of
 
 Investors Discount Corp.
 
 and clearly states that losses should be those of future years with no limitation to one year.
 

 Other cases, though not directly confronting the issue, indicate in dicta that the focus is on all future losses. For example, the Supreme Court in
 
 Nash v. United States,
 
 398 U.S. 1, 2, 90 S.Ct. 1550, 1550, 26 L.Ed.2d 1 (1970), stated:
 

 Under the reserve method of accounting a taxpayer includes in his income the full face amount of a receivable on its creation and adjusts at the end of each taxable year the reserve account so that it equals that portion of current accounts receivable that is estimated to become worthless in
 
 future years.
 
 (Emphasis added.)
 

 
 *1576
 

 Merchants Industrial Bank v. Commissioner,
 
 475 F.2d 1063, 1065 (10th Cir.1973), elaborated on
 
 Nash:
 

 In
 
 Nash v. United States,
 
 the Supreme Court refers to the reserve method of accounting by § 166(c) and says that the year-end adjustment equals that portion of the receivables ‘estimated to become worthless in future years.’ The use of the plural rejects the concept that the adjustment takes into consideration only the next taxable year.
 

 See also Thor Power Tool Co. v. Commissioner,
 
 439 U.S. 522, 526, 99 S.Ct. 773, 777, 58 L.Ed.2d 785 (1979);
 
 Winter & Hirsch, Inc. v. United States,
 
 215 Ct.Cl. 518, 571 F.2d 11, 12 (1978);
 
 Smoot Sand & Gravel Corp. v. Commissioner,
 
 274 F.2d 495, 501 (4th Cir.),
 
 cert. denied,
 
 362 U.S. 976, 80 5. Ct. 1061, 4 L.Ed.2d 1011 (1960).
 

 Other Considerations
 

 We have carefully considered the government’s other arguments, and the Claims Court’s rationale stated in its opinion, but we are not persuaded by them.
 

 For example, the government argues that it would be inconsistent to permit a deduction immediately for losses anticipated in all future years while taxing the interest income from outstanding loans only from year to year as they become due. Beneficial’s “future-years” focus, the government urges, is inconsistent with the concept of annual tax accounting.
 

 We are not persuaded that such inconsistencies exist. The accounting notion of a bad debt reserve is based on “impairment to capital.” If it is reasonably certain that an outstanding debt will ultimately be un-collectable, that amount of debt is deemed worthless immediately. The taxpayer has constructively suffered a present loss because it will never be repaid the money it has loaned. We do not see how taxing interest in the year due is inconsistent with that. Moreover, proper additions to reserve, with appropriate adjustments, are calculated each year—certainly consistent with annual tax accounting.
 

 The government argues that Beneficial’s approach created a clear, practical disadvantage for banking institutions that were separately restrained, under §§ 585(b)(3) and 593(b)(1)(A) and (4) of the IRC, to loan losses occurring in the next succeeding year. Even if that disadvantage existed, it is not our job to correct it. We merely construe the statute to see what was intended. If, of course, a practical problem bears on the issue of Congressional intent, we will consider it when construing the statute. But, courts are not at liberty to construe statutory language contrary to its meaning merely because its practical effects are undesirable. Correcting those effects is up to Congress. Indeed, as indicated at the outset of this opinion, § 166(c) has been repealed by § 805(a) of the Tax Reform Act of 1986. Now, the reserve method of accounting for bad debts is available only to certain institutions, effective for taxable years beginning after December 31, 1986.
 
 See
 
 § 901 of the Tax Reform Act of 1986, amending 26 U.S.C. § 585.
 

 REVERSED AND REMANDED.
 
 [6]
 

 [1]
 

 . Reference to the IRC throughout this opinion is to the tax code prior to the Tax Reform Act of 1986.
 

 [2]
 

 . The deductible addition equalled the appropriate level of the reserve at the end of the year minus an adjusted level of the reserve balance at the beginning of the year. The adjusted level of the reserve at the beginning of the year eq-ualled the level of the reserve at the beginning of the year minus bad debts actually charged off during the year plus amounts actually recovered during the year on debts previously charged off.
 

 [3]
 

 . Under that formula one: (1) computes an average percentage based on bad debts for the current and five preceding tax years divided by the accounts and notes receivable outstanding; (2) multiplies the percentage by the receivables outstanding at the end of the current tax year, thereby giving the "loss reserve”; (3) adds the charges to the reserve during the current tax year, thereby giving the "total reserve requirement”; and (4) subtracts the balance in the reserve at the end of the preceding tax year. The resulting amount is the deductible addition to the bad debt reserve.
 

 [4]
 

 . Beneficial adds that, if any part of that impairment is subsequently recovered, corresponding adjustments are made to reflect the reduction in impairment. See note 2,
 
 supra.
 

 [5]
 

 .
 
 Compare Mingus Constructors v. United States,
 
 812 F.2d 1387, 1391, (Fed.Cir.1987) (a party filing an unsuccessful summary judgment motion below is not necessarily estopped from arguing on appeal (from an order granting its opponent’s summary judgment motion) the existence of a genuine issue of material fact.)
 

 [6]
 

 . Beneficial filed a motion for partial, not complete, summary judgment because, it contends, there may still be minor computational issues remaining in the case. The case is remanded for the Claims Court to address any such issues.