# Authority to Investigate Federal Aviation Administration Employee Complaints Alleging Reprisal for Whistleblowing

The Office of Special Counsel lacks authority to investigate complaints brought by Federal Aviation Administration employees alleging reprisals against them in response to whistleblowing activity.

September 23, 1997

MEMORANDUM OPINION FOR THE SPECIAL COUNSEL
U.S. OFFICE OF SPECIAL COUNSEL

This responds to the Deputy Special Counsel's letter of May 20, 1997, requesting our legal opinion on the authority of the Office.of Special Counsel ("OSC") to investigate complaints brought by employees of the Federal Aviation Administration ("FAA") alleging reprisals for whistleblowing.[1] For the reasons set forth below, we conclude that OSC lacks authority to investigate such complaints.

## I. BACKGROUND

In the 1996 Department of Transportation and Related Agencies Appropriations Act, Congress directed the FAA to establish a "personnel management system to address the unique demands of the agency's work force." Department of Transportation and Related Agencies Appropriations Act for Fiscal Year 1996, Pub. L. No. 104–50, § 347, 109 Stat. 436, 460 (1995), *as amended by* Pub. L. No. 104–122, 110 Stat. 876 (1996), *reprinted in* 49 U.S.C.A. § 106 note (West 1997) ("DOT Appropriations Act" or "Act").[2] Section 347(b) of the Act provides that title 5 of the United States Code is inapplicable to FAA personnel matters, with certain enumerated exceptions:

> (b) The provisions of title 5, United States Code, shall not apply
> to the new personnel management system developed and imple-
> mented pursuant to subsection (a), *with the exception of—*

---

[1] Letter for Dawn E. Johnsen, Acting Assistant Attorney General, Office of Legal Counsel, from James A. Kahl, Deputy Special Counsel, U S. Office of Special Counsel (May 20, 1997) ("OSC Letter"). This letter enclosed an undated memorandum from the FAA, together with supporting documentation, setting forth the FAA's position on the issue.

[2] Section 347 of the Act provides in part

> (a) In consultation with the employees of the Federal Aviation Administration and such non-governmental experts in personnel management systems as he may employ, *and notwithstanding the provisions of title 5, United States Code, and other Federal personnel laws,* the Administrator of the Federal Aviation Administration shall develop and implement, not later than January 1, 1996, a personnel management system for the Federal Aviation Administration that addresses the unique demands on the agency's workforce

109 Stat at 460 (emphasis added)

(1) *section 2302(b), relating to whistleblower protection*;
(2) sections 3308–3320, relating to veterans' preference;
(3) chapter 71, relating to labor-management relations;
(4) section 7204, relating to antidiscrimination;
(5) chapter 73, relating to suitability, security, and conduct;
(6) chapter 81, relating to compensation for work injury; and
(7) chapters 83–85, 87, and 89, relating to retirement, unemployment compensation, and insurance coverage.

109 Stat. at 460 (emphasis added).

Section 2302(b) of title 5 lists eleven prohibited personnel practices, but section 347(b) of the DOT Appropriations Act adopts for the FAA personnel management system only those "relating to whistleblower protection," which are found in subsection (8) of § 2302(b). That subsection prohibits federal government supervisors from taking retaliatory personnel actions against employees who disclose agency legal violations, gross mismanagement or waste of funds, abuses of authority, or substantial and specific dangers to public health or safety. 5 U.S.C. § 2302(b)(8) (1994).[3] Disclosures covered under this provision include not only public disclosures, but also disclosures "to the Special Counsel, or to the Inspector General of an agency or another employee designated by the head of the agency to receive such disclosures." *Id.* § 2302(b)(8)(B).

Normally, when federal employees allege that they have been subject to a prohibited personnel practice, including violations of the whistleblower provisions of § 2302(b)(8), OSC has authority to receive and investigate such allegations. *See* 5 U.S.C. § 1214 (1994). If the Special Counsel finds reasonable grounds to believe that a violation has occurred and corrective action is required, the Special Counsel must report the determination to the Merit Systems Protection Board ("MSPB"), the affected agency, and the Office of Personnel Management. *Id.* § 1214(b)(2)(B). If the agency fails to act to correct the prohibited personnel practice, the Special Counsel may petition the MSPB for corrective action. *Id.* § 1214(b)(2)(C). Because these procedures are set forth in parts of title 5 other than the provisions specifically adopted for the FAA in section 347(b) of the DOT Appropriations Act, the question posed by OSC is whether these procedures are

---

[3] Specifically, subsection 2302(b)(8) provides that federal government supervisors shall not, with respect to their authority over personnel actions,

> (8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of—
>
>> (A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—(i) a violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety,—if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs, .

5 U S C. § 2302(b)(8) The subsection also prohibits the same forms of retaliation in response to the same kinds of disclosures "to the Special Counsel, or to the Inspector General of an agency or another employee designated by the head of the agency to receive such disclosures." *Id.* § 2302(b)(8)(B)

nonetheless included in the Act's application of the § 2302(b) whistleblower protections to FAA employees.

OSC contends that "the 'whistleblower protection' that Congress mandated be preserved for FAA employees is, and always has been, inseparable from OSC's investigatory and enforcement functions," OSC Letter at 5, and therefore that section 347(b)'s incorporation of the whistleblower-protection provisions of 5 U.S.C. § 2302(b) should be construed to include OSC's investigative and enforcement provisions. The FAA, in contrast, asserts that the Act makes applicable to the FAA the substantive protection from whistleblower reprisals, but does not incorporate OSC enforcement procedures or MSPB review. Therefore, the FAA claims, complaints based on alleged reprisal for whistleblowing, like other personnel disputes raised by FAA employees, should be handled under the mechanisms of the newly authorized FAA personnel management system.

## II. ANALYSIS

### A.

Congress specified in the DOT Appropriations Act that the FAA should develop a new personnel management system "notwithstanding the provisions of title 5, United States Code, and other Federal personnel laws." DOT Appropriations Act § 347(a). It repeated that "[t]he provisions of title 5, United States Code, shall not apply to the new personnel management system" when it listed seven specific exceptions from the withdrawal of title 5 coverage. *Id.* § 347(b). Thus, Congress was clear that title 5 would not apply to the FAA unless it provided otherwise. We have proceeded to consider, therefore, whether Congress provided for application to the FAA of the title 5 OSC procedures normally followed in whistleblower cases, by addressing two possibilities: (1) that the text of 5 U.S.C. § 2302(b)(8) itself sufficiently incorporates the OSC procedures; or (2) that the OSC procedures are such an essential element of the whistleblower protections of § 2302(b) that Congress must have implicitly included them in the provision extending substantive whistleblower protections to FAA employees.

### B.

There is only one explicit reference to OSC in the provisions that are made applicable to the FAA under 5 U.S.C. § 2302(b). Generally, § 2302(b) defines prohibited personnel practices but does not prescribe the mechanisms for investigation and enforcement, which, for whistleblower protections, are provided in chapter 12 of title 5. *See* 5 U.S.C. §§ 1201–1222 (1994 & West Supp. 1997). Subsection 2302(b)(8), however, defines protected "whistleblowing" to include disclosures made "to the Special Counsel" as well as to agency Inspectors Gen-

eral or to other agency employees authorized to receive such disclosures. *Id.* § 2302(b)(8)(B). Although OSC does not rely on this reference in its submission, we have nonetheless considered whether it somehow incorporates the OSC procedures as part of the substantive protection extended to FAA employees by section 347(b).

The reference to disclosures to the Special Counsel, as well as to Inspectors General and to authorized agency officials, merely reflects Congress's efforts to define expansively the universe of persons to whom protected disclosures may be made without fear of retaliation. It does not independently authorize the investigative and enforcement powers that the referenced officials possess. Instead, those powers are authorized separately in chapter 12 of title 5. Thus, we do not believe that § 2302(b)(8)(B)'s reference to disclosures to the Special Counsel can, by itself, be construed to mean that Congress applied to the FAA the panoply of OSC investigative and enforcement provisions authorized under separate provisions of title 5 when it retained § 2302(b)(8) as part of the FAA personnel management system.

## C.

OSC does contend, however, that § 2302(b)(8) is not self-executing and that the whistleblower protections extended by the Act to FAA employees necessarily include the OSC procedures. This contention is based on OSC's view that Congress gave it a special role in the protection of whistleblowers, so that those protections are rendered ineffectual unless OSC has jurisdiction over their claims of reprisal.

In making this argument, OSC invokes the legislative histories of both the Civil Service Reform Act of 1978, Pub. L. No. 95–454, 92 Stat. 1111 ("CSRA") and the Whistleblower Protection Act of 1989, Pub. L. No. 101–12, 103 Stat. 16 ("WPA").[4] The CSRA established whistleblower reprisals as one of the eleven prohibited personnel practices of § 2302(b), and authorized the MSPB and its Special Counsel (the Special Counsel was attached to the MSPB under the original CSRA) to enforce that protection. *See* S. Rep. No. 95–969, at 8 (1978), *reprinted in* 1978 U.S.C.C.A.N. at 2730. The Senate Report explained the role originally contemplated for the Special Counsel in whistleblowing cases:

> For the first time, and by statute, the Federal Government is given
> the mandate — through the Special Counsel of the Merit Systems

---

[4] With respect to the DOT Appropriations Act itself, OSC has not identified (and we have not found) legislative history providing evidence that Congress intended the OSC investigative and enforcement authority authorized under chapter 12 of title 5 to apply to claims of whistleblower retaliation by FAA employees The Conference Report on Pub L No 104–50, for example, is not instructive on the issue *See* H R Conf Rep No 104–286, at 76 (1995) (describing the Conference amendment to the FAA personnel management provision of section 347 by merely stating that it "[r]etain[ed], with amendment, language in the Senate bill requiring development of a new personnel management system for the Federal Aviation Administration.").

> Protection Board — to protect whistle blowers from improper reprisals. The Special Counsel may petition the Merit Board to suspend retaliatory actions against whistle blowers. Disciplinary action against violators of whistle blowers' rights also may be initiated by the Special Counsel.

*Id.*

The WPA was subsequently enacted in response to perceived conflicts between the Special Counsel's duty to protect the rights of employees and its role in protecting the civil service merit system. *See* 135 Cong. Rec. 5034 (1989) (Joint Explanatory Statement on S. 508). In resolving this conflict, the WPA established the Office of Special Counsel "as a separate, distinct, and independent entity." *Id.* at 5032 (statement of Rep. Sikorski). The WPA also established that "the primary role of the Office of Special Counsel is to protect employees, especially whistleblowers, from prohibited personnel practices," and that "the protection of individuals who are the subject of prohibited personnel practices remains the [OSC's] paramount consideration." WPA § 2(b)(2)(A)–(C), 135 Cong. Rec. at 5026. As further explained in a Joint Explanatory Statement inserted in the record of the House debate on the WPA:

> Simply put, the Special Counsel must never act to the detriment of employees who seek the help of the Special Counsel. Unless employees have the assurance that the Office of Special Counsel is a safe haven, the Office can never be effective in protecting victims of prohibited personnel practices.

135 Cong. Rec. at 5034 (Joint Explanatory Statement on S. 508).

This legislative history, OSC contends, establishes that the protection and the procedures incorporated in the CSRA and the WPA must go hand in hand. OSC further emphasizes that, when Congress passed the WPA, it limited OSC's authority to release information about whistleblowers to their employing agencies, and thus "reaffirmed that a key element of whistleblower protection for federal employees is an independent agency that ensures that information discovered during an investigation is not put to use by the agency against the employee." OSC Letter at 3–4.

We do not dispute the validity of OSC's assertions that Congress generally believed that the whistleblower protections provided under title 5 should be enforced by OSC. We are not persuaded, however, that the legislative history on which OSC relies demonstrates, as OSC contends, that Congress believed that whistleblower protections are inherently meaningless unless an independent entity

such as OSC enforces them.[5] Although the passages reveal a congressional preference for independent enforcement as a general matter, and concern about agency retaliation, those preferences and concerns must be considered in light of the later enacted provisions of section 347 of the DOT Appropriations Act. Congressional intent in passing that statute, rather than in passing the CSRA or the WPA, is most critical in resolving the issue presented here.

The predominant congressional purpose of section 347 of the DOT Appropriations Act was to address the unique personnel needs of the FAA with a suitably modified personnel management system, *outside the purview of title 5.* Pub. L. No. 104–50, § 347, 109 Stat. at 460. Notwithstanding the significance of the role OSC plays in enforcing the whistleblower-protection provisions and other government personnel laws, OSC's investigative and enforcement authority is part and parcel of the government personnel regulatory structure embodied in title 5, which Congress rejected for the FAA. Considering the objectives of the 1996 FAA personnel management reform legislation, it does not seem anomalous that Congress would allow the FAA to deal with alleged prohibited personnel practices, including whistleblower-reprisal matters, under the FAA's new internal grievance or administrative procedures.

## D.

Our approach to this question is guided by basic canons of statutory construction. Although the interpretive canon *"expressio unius est exclusio alterius"* should be applied with caution, we believe it applies here with some force. As the Supreme Court has observed, "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus v. Glover Constr. Co.,* 446 U.S. 608, 616–17 (1980).

In section 347(b), Congress "enumerate[d] certain exceptions" to its general mandate that the provisions of title 5 would not apply to FAA personnel matters. In the case of whistleblower reprisal, Congress listed only the substantive prohibition among the excepted provisions, but did not list the separate provisions of title 5 providing for OSC and MSPB enforcement jurisdiction over such matters. This selective incorporation of only the substantive whistleblower provisions appears to be the very kind of explicit enumeration that forecloses the inference that additional exceptions were intended under the *expressio unius* canon applied in *Glover Construction* and similar authorities.

Nor does it appear that the limited incorporation of only the substantive whistleblower protection provision was merely inadvertent. In contrast to the whistleblower provision, other provisions of title 5 retained for the new FAA system

---

[5] As we note below, for example, Congress has enacted numerous whistleblower protection laws for the employees of federally regulated or quasi-governmental financial institutions and those laws do not involve enforcement by an independent investigative agency such as OSC *See* note 9, *infra*

under section 347(b) were broadly drawn to incorporate not only discrete sub-
stantive measures but entire regulatory and enforcement schemes.[6] Thus, close
examination of section 347(b) reveals that Congress listed the portions of title
5 that were to apply to the FAA's personnel management system with deliberate
selectivity. Congress could have readily incorporated OSC's whistleblower
enforcement procedures as part of the new FAA system in the same manner that
it incorporated other enforcement and regulatory schemes in the explicit language
of section 347(b). Its failure to do so is difficult to reconcile with the view that
Congress intended to apply those procedures to the FAA.

Generally, when Congress incorporates a specific statutory subsection by ref-
erence in subsequent legislation, it intends to have accomplished no more than
what is afforded by that subsection. *See, e.g., Sperling v. Hoffmann-La Roche,
Inc.*, 24 F.3d 463, 469–70 (3d Cir. 1994) (where Congress was precise in selecting
the portions of other acts "selectively incorporat[ed]" into the Age Discrimination
in Employment Act, only the subsections specifically named in the statute were
incorporated).[7]

Moreover, when Congress intends to exempt entities generally from title 5 but
to apply not only the substantive whistleblower protections but also all the
ancillary enforcement procedures set forth in chapter 12 (*see* 5 U.S.C. §§ 1201–
1219), it has demonstrated that it knows how to do so unambiguously. Thus, when
Congress applied only selected provisions of title 5 to the Panama Canal Commis-
sion, it provided for application of the whistleblower protection provisions as fol-
lows: "Section 2302(b)(8) (relating to whistleblower protection) *and all provisions
of Title 5 relating to the administration or enforcement or any other aspect
thereof*, as identified in regulations prescribed by the Commission in consultation
with the Office of Personnel Management." 22 U.S.C.A. § 3664(3) (West Supp.
1997) (emphasis added). Similarly, when Congress excluded the Federal Bureau
of Investigation from the general regulation of federal agency personnel practices,
*see* 5 U.S.C.A. § 2302(a)(2)(C)(ii) (West Supp. 1997), it prohibited whistleblower
reprisals and specified that "[t]he President shall provide for the enforcement of
this section in a manner consistent with applicable provisions of sections 1214

---

[6] Among the provisions explicitly applied to the FAA under section 347(b), for example, chapter 73 of title 5
incorporates an entire program of penalties and procedures governing employee "suitability, security, and conduct."
It includes specific procedures and rulemaking authority for dealing with employee violations of the illegal gift
rules, 5 U S C § 7351(b)–(c) (1994), and provision for the MSPB to impose or mitigate penalties for illegal political
activities by federal employees, *id.* § 7326 Similarly, chapter 81 of title 5 encompasses the comprehensive regulatory
and procedural scheme for worker's compensation in federal employment, including the procedures for asserting,
evaluating, and resolving a claim *See* 5 U S C. §§ 8119–8128 (1994) Chapter 84 of title 5 incorporates not only
the substance of the Federal Employees' Retirement System, but also the provisions for the presentation and adjudica-
tion of claims arising under that system *See* 5 U S C A. §§ 8461–8467 (West 1996) The broad incorporation of
these provisions stands in conspicuous contrast to section 347(b)'s narrow reference to the whistleblower protection
provision of § 2302(b) only, with no reference to the enforcement provisions of chapter 12.

[7] Conversely, when Congress cites to a general provision of a statute, it is error to presume that the reach of
the reference is confined to a specific subsection *See E.I. du Pont de Nemours & Co v. Train*, 430 U S 112,
136 (1977) ("[I]n other portions of § 509 [of the Federal Water Pollution Control Act], Congress referred to specific
subsections of the Act and presumably would have specifically mentioned § 301(c) if only action pursuant to that
subsection were intended to be reviewable in the court of appeals ")

and 1221 of this title [i.e., the OSC and MSPB enforcement provisions]." 5 U.S.C. § 2303(c) (1994).

The absence of any similar reference to the whistleblower protection enforcement provisions of title 5 in section 347(b)(1) of the DOT Appropriations Act supports our conclusion that Congress did not intend those provisions to apply to the FAA. *Cf. Badaracco v. Commissioner,* 464 U.S. 386, 395 (1984) (when Congress intends to accomplish a precise statutory end, "it knows how unambiguously to accomplish that result"); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 15 (1981) ("[i]n the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate"); *Lannom Mfg. Co. v. United States Int'l Trade Comm'n,* 799 F.2d 1572, 1580 (Fed. Cir. 1986) ("when Congress intends to grant a right of action, it does so clearly and unambiguously").[8]

## E.

Finally, we do not find that FAA employees are deprived of meaningful protection against whistleblower reprisals under the FAA's new personnel management system. That system fully incorporates the provisions of 5 U.S.C. § 2302(b)(8) as a prohibited personnel practice. *See Federal Aviation Administration Personnel Management System,* Para. VIII((a)(vi) p. v (1996) ("FAAPMS"). An FAA employee who suffers a significant adverse personnel action (e.g., a suspension of over 14 days, reductions in pay or grade, and removal or reduction-in-force actions) that he or she believes is motivated by whistleblower reprisal can therefore invoke the provisions of section 2302(b)(8) under the FAA Appeals Procedure.

That procedure guarantees the aggrieved employee an evidentiary hearing before a panel of three arbitrators. FAAPMS Ch. III.5.[9] If the employee fails to obtain satisfactory relief under these procedures, judicial review is available. The FAA

---

[8] A number of other federal statutes apply various forms of whistleblower protection to the employees of government contractors and the employees of federally established or regulated financial institutions *See* 10 U S C § 2409 (1994) (Department of Defense contractors' employees), 12 U S C § 1441a(q) (1994) (Resolution Trust Corporation employees), 12 U S.C § 1790b (1994) (federally-insured credit union employees), 12 U S C § 1831j(a) (1994) (employees of federal banking agencies), 31 U.S C § 5328 (1994) (non-depository financial institutions); and 41 U S C § 265(b) (1994) (government contractors' employees) These statutes all specify a particular mode of enforcement, i.e , investigations by agency Inspectors General followed by agency- or court-ordered remedies in the case of government contractor employees, *see, e.g.,* 10 U S C § 2409(c), and direct enforcement by employee civil actions in U S district court in the case of the financial institution employees, *see, e g ,* 12 U S C § 1790b(b) These statutes further reinforce our view that Congress specifies the whistleblower enforcement remedies it intends to enact, rather than implying them

[9] The arbitration panels for the FAA Appeals Procedure are composed of one neutral arbitrator, one "partisan" selected by the appellant-employee from within the FAA, and one "partisan" selected by an FAA official from the area within the FAA where the appeal was generated FAAPMS Ch. III 5(e) A "partisan" means an FAA employee who is knowledgeable of the working conditions, environment, and practices of the work area where the appeal was filed, the partisan selected by management cannot be the proposing official or the deciding official *Id* Ch III 5(c)(u).

185

Appeals Procedure expressly provides that decisions of the panel shall be issued as final orders of the FAA Administrator under 49 U.S.C. § 46110 (1994), which are subject to judicial review upon petition to the U.S. Court of Appeals. FAAPMS Ch. III.5(m). Additionally, when alleged whistleblower reprisal does not involve a significant adverse action that is subject to the FAA Appeals Procedure, the aggrieved FAA employee may pursue his charges under the FAA Grievance Procedure. *Id.* Ch. III.4.

We acknowledge, as OSC points out, that these procedures are not coextensive with those provided by OSC under title 5 — particularly in the absence of a neutral enforcement body like OSC to investigate alleged violations — but they nonetheless provide a reasonable mechanism to enforce the provisions of the whistleblower reprisal statute on behalf of FAA employees.[10] For example, OSC emphasizes that, unlike the specific standards of proof governing employee claims of whistleblower reprisal governed by the provisions of 5 U.S.C. § 1214, the applicable FAA appeals and grievance procedures provide no guidance for establishing the burden of proof that must be satisfied when such claims are asserted by FAA employees. OSC Letter at 5. Although specific rules governing the standard of proof may be desirable, the absence of such rules does not render the FAA procedures incapable of providing a reasonable means for enforcement of the whistleblower protection statute.[11] Rather, the more flexible hearing procedures adopted by the FAA are consistent with Congress's intent to allow it to develop a personnel management system outside the purview of title 5 "that addresses the unique demands on the agency's workforce." DOT Appropriations Act § 347(a).

Whatever shortcomings may be discerned in the FAA's current procedures for implementing the whistleblower protection law, they do not demonstrate that OSC enforcement under the procedures of title 5 is so indispensable to the whistleblower protection law that Congress could not have intended any other mechanism to apply under the FAA personnel management system. Rather, while section 347 of the Act provides the FAA with sufficient authority to implement the whistleblower protection law effectively, it does not guarantee perfect implementa-

---

[10] We also acknowledge OSC's point that FAA probationary employees apparently do not have access to the current FAA Appeals and Grievance Procedures because they are not covered "employees" under those procedures *See* FAAPMS Chs. III 4(d)(ii) and III 5(c)(iii) Probationary employees aggrieved by unlawful reprisal action, however, could still make use of whatever formal or informal mechanisms are provided by the FAA for complaints by probationary employees, or lodge charges against the responsible supervisors with DOT's Inspector General In any event, this gap in the coverage of FAA's grievance and appeals procedures does not establish that OSC enforcement procedures are so essential to whistleblower protection that Congress must have intended for them to apply to the FAA when it enacted section 347 of the DOT Appropriations Act, it merely demonstrates a possible deficiency in the FAA's implementation of the whistleblower protection provisions made applicable to it by that Act

[11] We do not understand OSC to contend, nor do we believe, that the absence of specific provisions for allocating the burden of proof in the FAA's internal appeal and grievance procedures is a matter of constitutional concern The Supreme Court has repeatedly stated that "[o]utside the criminal law area, where special concerns attend, the locus of the burden of persuasion is normally not an issue of federal constitutional moment " *Concrete Pipe and Prods. of Cal., Inc v. Construction Laborers Pension Trust for Southern Cal*, 508 U S 602, 626 (1993) (quoting *Lavine v Milne*, 424 U S 577, 585 (1976)).

tion by the agency. Although the alleged deficiencies in the FAA's procedures raised by OSC may provide grounds for further assessment of those procedures, they do not provide persuasive evidence that Congress intended OSC enforcement procedures to apply to the FAA in whisteblower reprisal cases.

## Conclusion

A reasonable argument can be made that FAA employees would benefit from the protections of various provisions of title 5 that, like the OSC/MSPB enforcement provisions of 5 U.S.C. § 1214, were not incorporated in the new FAA personnel management system through section 347(b) of the Act. That choice, however, was for Congress to make in enacting the law, not for those who are required to interpret and apply what Congress enacted. Congress incorporated only selected provisions of title 5 into the FAA personnel management system, and the investigative and enforcement authorities of OSC were not among them.[12] Accordingly, we conclude that OSC is without statutory authority to investigate or otherwise pursue alleged violations of 5 U.S.C. § 2302(b)(8) asserted by FAA employees.

RICHARD L. SHIFFRIN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[12] Our conclusion is consistent with a decision issued by an Administrative Law Judge "(ALJ)" of the MSPB regarding another provision of title 5 — MSPB's jurisdiction over employee appeals under subchapter II of ch. 75 — invoked by an FAA employee challenging his removal from his position of employment. *Allen v. Department of Transp.*, No. CH–0752–97–0026–I–1 (MSPB Central Regional Field Office, 1996) ("Initial Decision"), *petition for review pending*, No. 97–3163 (Fed. Cir. 1997). The ALJ ruled that, under the new FAA personnel management system enacted by Pub. L. No. 104–50, the MSPB no longer had jurisdiction over such appeals. As the ALJ observed:

Chapter 75 of Title 5, which provides for a right of appeal to the Board from adverse actions to those who meet the definition of employee, is not listed as one of the provisions of Title 5 which remain applicable to the FAA personnel management system.

Initial Decision at 2.